STATE *ex rel.* WILLIAM GREEN, GEORGE MORRIS, FRANK MILLER, JOHN DOUGLAS and TOM RILEY v. J. R. CAPEHART, Chief of Police, City of ·Hollywood.

189 So. 708
Opinion Filed June 6, 1939

*J. H. Lathero,* for Plaintiffs in Error;

*C. H. Landefeld, Jr.,* for Defendant in Error.

BUFORD, J.—Writ of error brings for review judgment in habeas corpus' proceedings remanding petitioners to the custody of respondent.

The return shows that petitioners were charged by affidavits with the offense prescribed by Ordinance No. 320 of the City of Hollywood, Florida, which ordinance, *inter alia,* provides:

"Section 1.   Any person of sufficient ability, who shall refuse or neglect to support his family; any common prostitute; any window peeper; any person who engages in an illegal occupation or business; any person who shall be drunk or intoxicated or engaged in any indecent or abscenc conduct in any public place; *any vagrant;* any person who is found begging in a public place; any person found loitering in a house of ill-fame or prostitution, or place where prostitution or lewdness is practiced, encouraged or allowed; any person who shall loiter in or about any police station, police headquarters building, county jail, hospital, court building or any other place or public building for the purpose of soliciting employment of legal services and/or the services of sureties upon criminal recognizances; any person who shall be found jostling or roughly crowding people unnecessarily in a public place, shall be deemed a disorderly person. Proof of recent reputation for engaging in an illegal occupation or business shall be prima facie evidence of being engaged in an illegal occupation or business.

"Section 2.   All persons who shall make, aid, countenance or assist in making improper noise, riot, disturbance, breach of the peace or diversion tending to a breach of the peace within the limits of the City; all persons who shall collect in bodies or crowds for unlawful purposes, or for any purpose, to the annoyance or disturbance of other persons; all persons who are idle or dissolute and go about begging; all persons who use or exercise any juggling or other unlawful games or plays; all persons who are found in houses of ill-fame or gaming houses; all persons lodging in or found at any time in out-houses, sheds, barns, stables or unoccupied buildings, or underneath sidewalks, or lodging in the open air and not giving a good account of themselves; all persons who shall wilfully assault another in said City, or be engaged in or aid or abet in any fight, quarrel or other disturbance

in said City; all persons who stand, loiter, or stroll about in any place in said City waiting or seeking to obtain money or other valuable things from others by trick or fraud or to aid or assist therein; all persons who shall engage in any fraudulent scheme, device or trick to obtain money or other valuable thing in any place in said City, or who shall aid or abet or in any manner be concerned therein; all touts, ropers, steerers, or cappers, so called, for any gambling room or house who shall ply or attempt to ply their calling on any public street in said City; all persons found loitering about any hotel, block, barroom, dram-shop, gambling house or disorderly house, of wandering about the streets either by night or by day without any known lawful means of support, or without being able to give a satisfactory account of themselves; all persons who shall have or carry any pistol, knife, dirk knuckles, slung-shot, or other dangerous weapon concealed on or about their persons; all persons who are known to be thieves, burglars, *pick-pockets,* robbers or confidence men, either by their own confession or otherwise, or by having been convicted of larceny, burglary, or other crime against the laws of the State or any State in the United States, who are found lounging in or prowling or loitering around any steam-boat landing, railroad depot, banking institutions, place of public amusement, auction room, hotel, store, shop, thoroughfare, car, omnibus, public conveyance, public gathering, public assembly, court room, public buildings, private dwelling house, out-house, house of ill-fame, gambling house, tippling shop, or any public place, and who are unable to give a reasonable excuse for being so found, shall be deemed guilty of disorderly conduct."

The charge against Frank Miller, William Green and George Morris is that they were "known by the deponent to be persons with criminal records, loitering together back and forth between premises 1923 and 1945 Hollywood

Boulevard, same being a public thoroughfare in the City of Hollywood, going in and out of crowds and acting in a suspicious manner, during which time a large gathering of people were assembled at an annual 'Fiesta' all in violation of Ordinance No. 320, Section 2, City of Hollywood. The deponent states that the presence of the defendants in the City of Hollywood, County of Broward, State of Florida, are contrary to the laws in such cases made and provided, and against the peace and dignity of the City of Hollywood."

The charge against Thomas Riley and John Douglas is that they "now here, acting in concert one with the other, did unlawfully, by their offensive and disorderly conduct and display, annoy and interfere with persons who were attending the annual carnival on a public street, called the Boulevard in the City of Hollywood, County of Broward, State of Florida, in violation of the City Ordinance No. 320, Sec. No. 1 and No. 2, to-wit, as follows:

"Deponent in company with one William Janicke observed the aforesaid defendants rush from the sidewalk pushing and jostling a number of persons that were standing in a crowd on the roadway of the aforesaid street. Deponent further states that the defendant Riley stood directly behind an elderly unknown man who was in the crowd holding a baby on his left arm, while talking to a female companion. Deponent observed Riley place his right hand under the coat of the unknown man in close proximity to the left rear pants pocket of the aforesaid unknown man, while the defendant Douglas at the same time moved in close and stood looking around while half-way in between the aforesaid unknown man and the female companion. After a few minutes the defendant Riley walked away, and the defendant Douglas followed. Deponent saw defendants stop behind another unknown man who was standing among

the crowd, about 100 feet away. Both defendants stood behind the second unknown man and carried out the same actions as deponent saw defendants doing behind the aforesaid unknown man with the baby on his arm.

"Both defendants left the second unknown man and entered a cigar store farther down the street, and while therein deponents partner (William Janicke) notified two police officers to take the defendants into custody, and deliver them to the station house.

"While defendants was in a cell at the station house, deponent had a conversation with defendant Riley, in, the presence of the defendant Douglas. Deponent related to defendants the disorderly conduct charge, and explained to defendant Riley what he (deponent) saw when the attempt was made to pick the pocket of the man with the child on his arm, and the defendant Riley admitted it was the truth."

Motion was made to discharge the petitioners, notwithstanding the return. The return was held sufficient and the petitioners were remanded.

We think the ordinance is valid and that the charges embraced in the affidavits are sufficient to withstand an attack by habeas corpus proceedings.

There is no showing by the return or otherwise that the respondent was authorized by any warrant or commitment to hold the petitioners at the time the writ was sued out, nor does the record show that the alleged offense was committed in the presence of the arresting officer.

Without a showing of authority on the part of the respondent to restrain the relators of their liberty, they should have been discharged.

For the reasons stated, the judgment is reversed.

TERRELL, C. J., and WHITFIELD, BROWN, CHAPMAN and THOMAS, J. J., concur.