TESKE and others, Plaintiffs in error, vs. THE STATE, Defendant in error.

YOUNG, Plaintiff in error, vs. SAME, Defendant in error.

*February 6—March 7, 1950.*

For the plaintiffs in error there was a brief by *Martin, Clifford, Dilweg, Warne & Duffy* of Green Bay, and oral argument by *Lloyd O. Warne*.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *O. B. Strossenreuther,* district attorney of Shawano county, and oral argument by *Mr. Platz*.

GEHL, J. For about a month prior to July 1, 1949, the employees of the Badger Consolidated Co-operative of Shawano had been on strike. Defendant Young was secretary-treasurer and the other defendants were either members of or acting in the interests of the striking union. For a few days prior to July 1st there had been some dispute as to

the activities of the union's pickets particularly those which appeared to interfere with the operation of the railroad trains carrying goods in and out of the employer's plant upon tracks leading to the Sawyer street entrance to the plant. A meeting attended by Young and some of the city and county enforcement officers was held at which it was agreed that the pickets would maintain a distance of eight to ten feet apart, and that upon the approach of a train at the crossing on Sawyer street the officer in charge would ascertain from the crew of any approaching train if they desired to enter the employer's yard. They agreed also that if the train crew desired to enter the yard the pickets would stand aside and permit the train to enter.

On June 30th while the men were picketing at the crossing a train arrived there. The undersheriff directed the pickets to disperse. He was reminded by Young of the agreement and contacted the train's conductor who told him that the train would not go through unless there were eight feet of clearance from the center of the tracks. After some delay the train was pulled away.

In the forenoon of July 1st the sheriff met Young and told him that the union would not be permitted to picket at the railroad entrance and that if the pickets did so a barricade would be erected. Young protested that the erection of a barricade would not be legal nor in accordance with the agreement referred to, and stated that he had been advised that the loitering statute did not apply to a public street. The sheriff replied that a barricade would be erected and that he had been ordered to keep the pickets off the street.

In the afternoon of July 1st there was picketing at the Sawyer street railroad crossing and also at the Andrews street crossing, about a block away. The sheriff and another officer informed the pickets at the latter crossing that they had no right to picket there. They left and joined those at the Sawyer street crossing. There the pickets were walking

in single file across the railroad tracks. There is a dispute as to the number of men so engaged, the state contending that there were from fifty to seventy-five, and the defendants that there were no more than about fifteen or twenty. The state's witnesses testified that the pickets walked in a continuous circle, with a very short distance between the men, back and forth across the railroad tracks ahead of an approaching train so as to interfere with its movement. Some of defendants' witnesses testified that the purpose of the pickets was to obstruct the movement of a train, that the sheriff had instructed them to let the train go through but that he had not told them that the crew of the train approaching at the time of the fracas wanted to go through as he had previously agreed that he would.

As a train approached the sheriff ordered the pickets to disperse. They refused and the officers formed a "human chain" and pushed the pickets aside. They assembled again and continued picketing. When the train drew nearer the officers again attempted to disperse them and push them away from the tracks. The officers were not successful and threw tear-gas bombs into the crowd. This dispersed them momentarily, but they resumed the picketing. Again the officers pushed them away from the tracks. The officers formed a line by holding each other's hands for the purpose of pushing the pickets from the tracks. Their maneuver was resisted, the pickets pushing the officers onto the rails and going under and around the line and back onto the tracks. They were warned that further resistance would result in arrest. The pickets continued to push the officers. Arrests were made.

There was testimony by the state's witnesses that defendant Young told the pickets while they were walking on the railroad tracks to "keep moving. Keep that line going," that he directed the pickets to get on the tracks, and that he said further to the pickets, "Come on. Pressure. Get going, boys."

The undersheriff testified for the state that two hours or better were consumed in the fracas of July 1st.

Not all of the facts recited above are undisputed, but from the verdict it must be assumed that the jury believed that they existed.

For the sake of brevity we will refer to the defendants other than Young as the "pickets."

The pickets contend that they had the legal right to picket the railroad crossing. That is conceded, but it would not relieve them of the duty to refrain from disorderly conduct. The statute, sec. 348.35, provides:

"Any person who shall engage in any violent, abusive, loud, boisterous, vulgar, lewd, wanton, obscene, or otherwise disorderly conduct tending to create or provoke a breach of the peace or to disturb or annoy others, whether in a public or a private place, shall be punished by a fine of not more than $100 or imprisonment not over 30 days. . . ."

The pickets urge that *acts* of a person are not prohibited by its provisions, that they reach only *language* of the character described. The words of the statute must be read in the disjunctive, that is, they make it an offense to use such language *or* to engage in disorderly conduct tending to the result described. The statute was enacted in 1947, undoubtedly to supply an omission in the existing law and to reach such acts as are here charged. If it had been intended to prohibit only offensive language there would have been no need for the use of the words, "otherwise disorderly conduct."

Disorderly conduct is defined in 17 Am. Jur., Disorderly Conduct, p. 99, sec. 1, as follows:

"While it is impossible to state with accuracy just what may be considered in law as amounting to disorderly conduct, the term is usually held to embrace all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, *whether committed by words or acts*." (Italics supplied.)

The jury was warranted in believing the testimony that the proximity of the pickets to the train impeded its movement, that they pushed the officers onto the rails, that they had been told to discontinue their resistance to the officers in their effort to maintain the peace, that one of them pushed an officer against the train, that some of them forced their way through the cordon formed by the officers to permit movement of the train, that one of them came through the cordon "swearing and cursing."

Such conduct, if it were not otherwise disorderly, is expressly prohibited by sec. 111.06 (2) (f), Stats., which declares that it is an unfair labor practice:

"To hinder or prevent, by mass picketing, threats, intimidation, force, or coercion of any kind the pursuit of any lawful work or employment, or to obstruct or interfere with entrance to or egress from any place of employment, or to obstruct or interfere with free and uninterrupted use of public roads, streets, highways, railways, airports, or other ways of travel or conveyance."

The constitutional right to freedom of speech, relied upon by appellants, does not include the right to engage in conduct such as the jury found was practiced in this case. *Senn v. Tile Layers Protective Union,* 301 U. S. 468, 57 Sup. Ct. 857, 81 L. Ed. 1229.

There was sufficient evidence, manifestly believed by the jury, to sustain the charge of disorderly conduct on the part of the.pickets and their conviction.

Defendant Young was convicted of violation of sec. 346.39, Stats., which provides:

"Any person who shall knowingly resist any sheriff, deputy sheriff, constable, marshal, conservation warden, or other ministerial officer while engaged in the lawful execution of any civil or criminal process issued by any court, body, board, or officer authorized to issue the same, or in lawfully doing any act as such officer, or who shall, in any way, knowingly and intentionally counsel, advise, or procure

any other person to resist any such officer so lawfully engaged in the execution of such process or in lawfully doing such other act as such officer, shall be punished by imprisonment in the county jail not more than one year or by fine not exceeding three hundred dollars."

He contends that since the pickets were acquitted of the charge of resisting an officer the verdict is perverse, that the jury having found that the pickets did not resist, Young may not be found guilty of the charge that he counseled, advised, or procured them to do so. Applying the contention to the general proposition, it would be easy to imagine a situation where one might advise or counsel another to resist an officer and the other person refuse to follow the advice or counsel. Could it be said in that case that merely because the person advised has refused, that the advisor has not violated? The answer is obvious. If, as defendant Young contends, the verdict were inconsistent in that the pickets were in the same trial acquitted of the charge of resisting an officer and he was convicted of advising such alleged resistance, the inconsistency would not be fatal. Sec. 353.05, Stats., provides:

"Every person concerned in the commission of an offense, whether he directly commits the offense or aids or abets in or hires, counsels, or otherwise procures its commission, may be indicted or informed against as principal and tried thereon either separately or with others concerned, and may be convicted of and sentenced for any degree of the offense charged or any offense included in the charge, whether the person directly committing the offense has been convicted or acquitted, or convicted of some other degree of the offense or of some other offense based upon the same occurrence, or has not been apprehended or is not amenable to justice or for any other reason has not been tried, or is a corporation not subject to prosecution for the offense. It shall not be deemed a variance if a person indicted or informed against for the commission of an offense shall be proved to have aided or abetted in or hired, counseled, or otherwise procured its commission by another, nor shall proof of the guilt

or innocence of the person directly committing the offense be required for the conviction of any other person concerned therein."

Logical consistency in verdicts in criminal cases has not been required by this court. *Gundlach v. State,* 184 Wis. 65, 198 N. W. 742; *State v. Lloyd,* 152 Wis. 24, 139 N. W. 514; *State v. DeHart,* 242 Wis. 562, 8 N. W. (2d) 360; nor by the United States supreme court, *Dunn v. United States,* 284 U. S. 390, 52 Sup. Ct. 189, 76 L. Ed. 356.

We have quoted, in substance, the statements made by Young directing the activities of the pickets. Except for the use of the expressions "more pressure," "come on, pressure," and if there had been no evidence of improper conduct on the part of the pickets, it might be successfully contended that he indicated no purpose by the language he used except to direct the activities of the men picketing, legal or illegal, and that he did not advise or counsel resistance to the officers.

The testimony with respect to the conduct of the pickets heretofore referred to would support a finding of resistance on their part, and, under those circumstances, permit the jury to construe Young's words as a direction or advice to resist.

True, the jury acquitted the pickets of the charge of resisting, but, as has been pointed out, the apparently inconsistent verdict is not fatal—it is quite probable that the jury in a spirit of compromise concluded that a conviction of disorderly conduct would permit sufficient penalty for them.

Counsel for defendant Young cite and quote from *State v. Welch,* 37 Wis. 196, 200, as authority for their contention that the mere use of words without acts of resistance does not constitute violation of the statute. It must be observed that in that case the defendants were charged with resistance—here Young was convicted of counseling the act. To

counsel or advise it is not necessary to participate by any physical act in the resistance itself.

What has been said disposes of counsels' objection to the judge's charge to the effect that the jury might find Young guilty because of what he said to the pickets.

*By the Court.*—Judgments affirmed.