STATE, Respondent, v. GIVENS, Appellant.
SAME, Respondent, v. WEAVER, Appellant.
SAME, Respondent, v. TAYLOR, Appellant.
SAME, Respondent, v. JOHNSON, Appellant.
SAME, Respondent, v. BERNDT, Appellant.

*June 4—June 25, 1965.*

HEFFERNAN, J., dissents.

112

For the appellants there was a brief by *Barbee & Jacobson* of Milwaukee, and oral argument by *Thomas M. Jacobson* and *Lloyd A. Barbee.*

For the respondent the cause was argued by *Aladin A. DeBrozzo,* deputy district attorney of Milwaukee county, with whom on the brief were *Bronson C. La Follette,* attorney general, and *Hugh R. O'Connell,* district attorney.

GORDON, J.

## *Vagueness of Statute.*

The appellants argue that the disorderly conduct statute is too vague to be enforced. Sec. 947.01 (1), Stats., quoted above, sets forth six specific types of conduct which are proscribed; this covers conduct that is "violent, abusive, indecent, profane, boisterous, [or] unreasonably loud;" thereafter the statute contains a so-called "catchall" clause which prohibits "otherwise disorderly conduct" which tends to "provoke a disturbance."

It has often been held that a criminal statute must be definite enough to inform those who are subject to it as to what acts will render them liable to its penalties. *Lanzetta v. New Jersey* (1939), 306 U. S. 451, 453, 59 Sup. Ct. 618, 83 L. Ed. 888; *Connally v. General Construction Co.* (1926), 269 U. S. 385, 391, 46 Sup. Ct. 126, 70 L. Ed. 322. See Unconstitutional Uncertainty—An Appraisal, 40 Cornell Law Quarterly (1955), 195, 196.

We believe that the disorderly conduct statute in the cases at bar is reasonably explicit; the six types of affirmative conduct which are expressly listed in the statute all tend to disrupt good order and to provoke a disturbance. When the statute, after the specific enumerations, in a "catchall" clause proscribes "otherwise disorderly conduct" which tends to "provoke a disturbance," this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance. Such interpretation rests upon the rule of *ejusdem generis.* See *State ex rel. Dinneen v. Larson* (1939), 231 Wis. 207, 216, 284 N. W. 21, 286 N. W. 41; *Gallagher v. McKeague* (1905), 125 Wis. 116, 121, 103 N. W. 233. Upon this approach, the instant statute sufficiently identifies the type of behavior which the legislature intended to be contrary to law.

The definition of disorderly conduct contained in *Teske v. State* (1950), 256 Wis. 440, 444, 41 N. W. (2d) 642, is as follows:

" 'While it is impossible to state with accuracy just what may be considered in law as amounting to disorderly conduct, the term is usually held to embrace all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts.' "

This view is substantiated by the report of the legislative council's judiciary committee, published in February, 1953; this report was submitted to the governor and to the legislature when consideration was being given to the enactment of what is now sec. 947.01 (1), Stats. With reference to the disorderly conduct statute (then sec. 347.01), the committee made the following comment:

"The crime of disorderly conduct is based upon the principle that in an organized society one should so conduct himself as not to unreasonably offend the senses or sensibilities of others in the community. Subsection (1) embodies this principle in a form which is on the one hand sufficiently flexible to permit law enforcement officers to keep order in the community and on the other hand sufficiently definite to prevent abuses in administration. The words 'violent, abusive, indecent, profane, boisterous, unreasonably loud . . . conduct' give certainty to the crime while at the same time being broad in scope. On the other hand, they are not broad enough to take care of every situation generally considered to be disorderly . . . . This is not intended to imply that all conduct which tends to annoy another is disorderly conduct. Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. This is implicit in the phrase 'tends to disturb or annoy others.' The question is not whether a particular person was disturbed or annoyed but whether the conduct was of a kind which tends to disturb or annoy others. The section does not protect the

hypersensitive from conduct which generally is tolerated by the community at large.

"The other phase of disorderly conduct under subsection (1) is conduct likely to cause or provoke a disturbance of public order, and what type of conduct is likely to do this is largely a question of fact in each case." (Vol. V, Report on the Criminal Code, page 208.)

The fact that a statute fails to itemize with particularity every possible kind of conduct which would violate such statute does not make it constitutionally vague. *Jordan v. De George* (1951), 341 U. S. 223, 71 Sup. Ct. 703, 95 L. Ed. 886; *United States v. Ragen* (1942), 314 U. S. 513, 62 Sup. Ct. 374, 86 L. Ed. 383; *Levy Leasing Co. v. Siegel* (1922), 258 U. S. 242, 42 Sup. Ct. 289, 66 L. Ed. 595; *Nash v. United States* (1913), 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232; *St. Petersburg v. Calbeck* (Fla. 1959), 114 So. (2d) 316; *State ex rel. Green v. Capehart* (1939), 138 Fla. 492, 189 So. 708; *St. Paul v. Morris* (1960), 258 Minn. 467, 104 N. W. (2d) 902; *State v. Reynolds* (1954), 243 Minn. 196, 66 N. W. (2d) 886. But cf. *People v. Diaz* (1958), 4 N. Y. (2d) 469, 151 N. E. (2d) 871, 176 N. Y. Supp. (2d) 313; *Griffin v. Smith* (1937), 184 Ga. 871, 193 S. E. 777.

In *United States v. Wurzbach* (1930), 280 U. S. 396, 399, 50 Sup. Ct. 167, 74 L. Ed. 508, Mr. Justice HOLMES stated:

"Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk."

### *Proof of Criminal Acts.*

As their primary contention, the appellants claim that the record fails to establish facts which bring them within the

disorderly conduct statute. The appellants point to their quiet, passive, and nonviolent demeanor and contend that the holding of this case should be governed by recent United States supreme court cases in which breach-of-peace convictions were reversed because the defendants were publicly expressing their views under constitutional protections. *Cox v. Louisiana* (1965), 379 U. S. 536, 85 Sup. Ct. 453, 13 L. Ed. (2d) 471; *Fields v. South Carolina* (1963), 375 U. S. 44, 84 Sup. Ct. 149, 11 L. Ed. (2d) 107; *Henry v. Rock Hill* (1963), 375 U. S. 6, 84 Sup. Ct. 44, 11 L. Ed. (2d) 38; *Edwards v. South Carolina* (1963), 372 U. S. 229, 83 Sup. Ct. 680, 9 L. Ed. (2d) 697.

Can it be said that the acts in the case at bar were protected because the defendants were validly exercising their constitutional rights of freedom of speech, freedom of assembly, and freedom to petition for the redress of grievances? The answer is "No," and the reason is that such constitutional protections are not absolute. As the United States supreme court recently said in *Cox v. Louisiana, supra,* at page 554:

"The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could

not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations."

A similar point of view was very recently expressed in *Drews v. Maryland* (1965), 381 U. S. 421, 85 Sup. Ct. 1576, 14 L. Ed. (2d) 693, in which a dissenting justice (Mr. Chief Justice WARREN, joined by Mr. Justice DOUGLAS) stated:

"In dissenting, I of course do not suggest that a civil rights demonstrator, or anybody else, has a right to block traffic, or bar access to a man's home or place of business."

The Connecticut court faced a somewhat comparable problem in *State v. Petty* (1962), 24 Conn. Supp. 337, 190 Atl. (2d) 502. That case did not relate to the quarters of a public official, as do the cases at bar, but instead involved the waiting room of a real-estate firm. The Connecticut court noted that the defendants who had staged a sit-in demonstration in the waiting room were neither violent nor boisterous, but nevertheless the court concluded that the defendants created an offensive condition, and the demonstrators were adjudged guilty of disorderly conduct.

The record in the instant case establishes that three of the defendants (Mr. Givens, Mrs. Weaver, and Mrs. Johnson) entered the waiting room of Mr. Grobschmidt's office and sat on the floor in that room, which was described as "quite crowded." The record does not disclose the exact dimensions of the area in question. A photograph which was received into evidence is reproduced with this opinion. It suggests the confined quarters in which this sit-in was conducted. Although Mr. Grobschmidt testified that the presence of the protesters on the floor of his waiting room interfered with the usual activities of his office, we believe that the photograph establishes such fact with even greater force.

The right to demonstrate (even peaceably) in pursuance of our constitutional rights of freedom of speech, freedom of assembly, and freedom to petition for redress of grievances might be appropriate in one place and not in another. Picketing on a broad sidewalk is not comparable to a sit-in in the small confines of an office; a demonstration in an expansive public park is not comparable to a sit-in in the narrow corridor leading to a public official's office.

Perhaps the facts just referred to sufficiently demonstrate that the sit-in in the instant cases met the requirements of the statute as to being disruptive of good order and tending to cause or provoke a disturbance. The majority of the members of the court, however, rely in affirming the judgments upon the further fact, in addition, that each defendant deliberately and knowingly violated commands of those in charge of the area.

Those in authority over public buildings or particular areas therein must be accorded discretion to regulate conduct therein. Such regulation must be reasonably designed to preserve good order and facilitate the public uses for which the building was intended. Such regulation must not, of course, deprive anyone of his constitutional or other legal rights. Within these limits, new and temporary commands or requirements, such as limiting access to rooms ordinarily open, requiring people to stand so as to keep passageways open, and the like, may be appropriate to meet a particular set of circumstances as it emerges.

In the instant cases, the limitation of access to room 214AA on the morning in question, and the requirement that people in the hallway keep moving or stand against the wall were not shown to be unreasonable. Such limitation and requirement did not violate the defendants' rights peaceably to assemble nor to petition for redress of grievances. There was evidence sufficient so that a jury could find beyond a reasonable doubt that the requirements violated by each

defendant were made known to him, each was given a reasonable opportunity to comply, and each persisted in violation.

In *Feiner v. New York* (1951), 340 U. S. 315, 320, 71 Sup. Ct. 303, 95 L. Ed. 295, the supreme court of the United States upheld a conviction for breach of the peace and considered as one of the important facts, among all the other circumstances, the refusal of the defendant, who was making a speech, to obey police requests to stop speaking.

When an individual seeks to pursue his constitutionally protected rights, criminality is not to be assessed against him on a supersensitive standard. Thus, one who wishes to engage in his right to speak freely or to assemble with others for the purpose of protesting should not be prevented from pursuing such right merely because some hypercritical individual of delicate sensibilities is annoyed or discommoded. However, substantial intrusions which offend the normal sensibilities of average persons or which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons are cognizable under Wisconsin statute sec. 947.01 (1). In the cases at bar, the defendants' acts were deemed disorderly by two juries, and convictions were entered by two trial judges; this court also regards the defendants' acts as being abusive and tending to provoke a disturbance to the degree of being disorderly. We are satisfied from the record that guilt has been assessed on substantial grounds and not upon hypercritical or supersensitive grounds.

## Prior Restraint.

The appellants contend that their arrests were the result of pre-existing orders from the sheriff to his deputies; they also point out that the deputies had restricted their admission

to a public waiting room. Did this constitute a prior restraint on the appellants' rights to freedom of speech and freedom of assembly? We think not.

We find no similarity here to those cases in which an individual is required to obtain a permit before being allowed to express his views in a public place. See *Kunz v. New York* (1951), 340 U. S. 290, 71 Sup. Ct. 312, 95 L. Ed. 280; *Niemotko v. Maryland* (1951), 340 U. S. 268, 71 Sup. Ct. 325, 95 L. Ed. 267; *Saia v. New York* (1948), 334 U. S. 558, 68 Sup. Ct. 1148, 92 L. Ed. 1574. The arrests were not made until after the defendants had engaged in the physical sit-in which has already been described.

The officers were prepared, but we find no basis for criticism in this fact. The demonstrations of the previous days, together with the prospective arrival of numerous protesters in a confined area, entirely warranted the practice of having deputies present and alerted. In our opinion, there was no prior restraint of any of the petitioners' constitutionally protected rights.

### The Appellants' Appendix.

The appendix prepared by the appellants contains over 20 pages of questions and answers. As also noted in *Withers v. Tucker,* ante, p. 82, 135 N. W. (2d) 776, decided at this month's assignment, this practice contravenes sec. 251.34 (5) (c), Stats., which directs that "the abridgment of the testimony shall be in narrative form. . . ."

*By the Court.*—Judgments affirmed.

HEFFERNAN, J. (*dissenting*). I respectfully dissent from the conclusions of the majority. I agree with the able analysis of the disorderly conduct statute, but I believe that the rationale of that analysis leads to the opposite conclusion. The majority concluded that the statute is saved from the

attack of vagueness by the application of the doctrine of *ejusdem generis.* Hence, in order to convict the defendants under the catchall phrase of "otherwise disorderly conduct," the conduct complained about must be similar in nature to that which the body of the statute typifies as "violent, abusive, indecent, profane, boisterous, unreasonably loud." Certainly, none of these adjectives describe the conduct of the defendants. The record shows that at no time was there resort to violence or to any improper language. Conversations between defendants and the officers were restrained and courteous. The record shows that the defendants sat on the floor of the waiting room of the chairman of the county board. It does not appear that they were there for any great length of time. The duration of this conduct is not in evidence, but a perusal of the record indicates that the defendants were in this posture at the most for a very few minutes, perhaps for only a few seconds.

There is no evidence that the work of the county board chairman was impaired in any way, nor even that ingress and egress to the office was in any manner seriously impeded.

I do not doubt that a sit-in might be conducted in a manner that would constitute disorderly conduct, but absent evidence of acts of violence and disorder as enumerated in this statute, I believe this conclusion could be reached only if the access to buildings, offices, or streets was substantially impeded or if the sit-in continued for such a length of time or under such circumstances that it would interfere with the use of the premises by the public and public officials.

In *Teske v. State* (1950), 256 Wis. 440, 444, 41 N. W. (2d) 642, we quoted with approval the rule that "disorderly conduct" embraces "all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts."

I deem the conduct of the defendants herein neither immoral nor indecent, and, hence, not within the prohibition of the statute.

The majority opinion intimates that in some manner the conduct was abusive. None of the commonly accepted synonyms or definitions for "abusive" would appear to make this typification of the conduct appropriate. 1 Words and Phrases (perm. ed.), p. 364, cites, among others, the following definitions of the word "abusive": "Tending to deceive; . . . prone to ill treat by coarse, insulting words" or "using ill treatment, injurious, improper, hurtful, offensive, reproachful." "Abusive" is generally equated with "indecent" or "obscene." Abusive language is generally thought to be that which includes vituperative, scurrilous, insulting, gross, vile, impure, or obscene language. Certainly, the conduct of the defendants or their words cannot be described by these epithets.

I believe that the majority has erred in attempting to proscribe conduct that by no reasonable interpretation can be said to be within the contemplation of the disorderly conduct statute.

I would reverse.