¶ 40.
ANNETTE KINGSLAND ZIEGLER, J.
(dissenting). The question before this court is whether a personal injury attorney who obtains his or her client's written consent to receive copies of the client's health care records is a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b), such that the attorney need not pay certification and retrieval fees when requesting copies of the records from a health care provider. The circuit court concluded that such an attorney is exempt from the fees as a "person authorized by the patient." The court of appeals in examining the same statutory language answered this question in the negative, concluding that a "person authorized by the patient" within the meaning of Wis. Stat. §§ 146.81(5) and 146.83(3f)(b) is a person who has "the power to consent to the release of the patient's records," not a person who merely has the power to receive those records. Moya v. Aurora Healthcare, Inc., 2016 WI App 5, ¶ 16, 366 Wis. 2d 541, 874 N.W.2d 336 (emphasis added). This court reverses that court of appeals' determination today purportedly because the language is clear. I write because when utilizing traditional methods of statutory interpretation, examining the text, its context and construction, the plain meaning demonstrates that "person authorized by the patient" has a less expansive meaning than my colleagues have adopted.
¶ 41. The court concludes that an attorney authorized by his or her client in writing to obtain the client's health care records is a "person authorized by the patient" under Wis. Stat. §§ 146.81(5) and 146.83(3f)(b). In so doing it explains that it is relying *61 on the "plain meaning" of the statute. I acknowledge that the interpretation of the statutes adopted by this court is defensible if one only looks at those words in a vacuum. The conclusion of the court of appeals, however, is also supported by the text. How do we know which interpretation is correct? Each interpretation relies on the language of the statute, yet the court of appeals and this court reach opposite conclusions. I endeavor to wade through a more thorough statutory analysis in order to reach a conclusion.
¶ 42. As a practical matter, it certainly makes sense that the legislature might choose to exempt personal injury attorneys from the challenged fees. These attorneys act as advocates for their clients and perhaps should be able to obtain the records without the fee. However, these lawyers are not listed in Wis. Stat. § 146.81(5), the statute that defines "person authorized by the patient," nor are they exempt under Wis. Stat. § 146.83(1b), whereby the legislature determined that public defenders need not pay the fee. These lawyers do not fall into the class of persons listed in § 146.81(5) as they are not otherwise legally poised to essentially become the decision-maker for the patient when the patient cannot legally act on his or her behalf. Section 146.81(5) defines "person authorized by the patient" in part to be:
[T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under *62 s. 155.05(2), except as limited by the power of attorney for health care instrument.
§ 146.81(5). Notably absent in this provision are lawyers who advocate on a patient's behalf in a lawsuit.[1] While it may make sense to exempt these lawyers from paying fees, the choice is not the court's to make; it is within the province of the legislature. I must examine the text of the statute at issue using fundamental tools of statutory construction to determine which of two interpretations of the phrase "person authorized by the patient" was intended by the legislature; as put by Aurora Healthcare, Inc., and Healthport Technologies, LLC ("Healthport"), these two interpretative options are: (1) "any person authorized in writing by the patient to obtain the patient's health care records"; or (2) "any person authorized in writing by the patient to consent to the release of the patient's health care records." In so doing I look to the surrounding text and examine that text in light of the canons of construction, not just part of the statutory text, in a vacuum.
It is ... a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning. Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language.... It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory *63 interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.
State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 43. Given the above charge, I write to examine the statutes at issue and the court's reasoning, considering the disputed statutory text in context and in light of fundamental canons of construction. For reasons I will explain, the interpretation adopted by the court today fails to adhere to fundamental principles of statutory construction and in fact renders the overall statutory scheme virtually meaningless. Ultimately, I would conclude, like the court of appeals, that the text of the statutes requires a conclusion that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). The lawyer at issue is not within the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) nor is he or she exempt from payment of fees under § 146.83(1b) as are other lawyers. Thus, I must respectfully dissent.
h—I
¶ 44. I begin by setting forth established principles of statutory interpretation. Statutory interpretation is governed first and foremost by the principle that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) (denominating this rule the "Supremacy-of-Text Principle"). Judges should "deter-min[e] the application of a governing text to given facts *64 on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Id. at 33. This approach recognizes that "[t]he law is what the law says," Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 279 (1996) (Scalia, J., concurring in part and concurring in the judgment), and that "[a]n interpreter who bypasses or downplays the text becomes a lawmaker without obeying the constitutional rules for making law." Frank H. Easterbrook, Textualism and the Dead Hand, 66 Geo. Wash. L. Rev. 1119, 1120 (1998).
f 45. Proper statutory interpretation rests on the fundamental premise that "[n]othing but conventions and contexts cause a symbol or sound to convey a particular idea." Scalia & Garner, supra, at xxvii (emphases added).
The enactment of a law is a form of communication through language—from the law-giver to those affected by the law, as well as to those who must enforce, apply, or interpret the law. This sort of communication is only possible if the participants have a set of shared practices and conventions that permit them to convey meaning to each other. At the most basic level, intelligible communication requires that both parties attach the same meaning to the same sounds or signs. Furthermore, we often need to be able to tell which of several possible meanings is intended by considering the context in which a word is used. Our shared practices and conventions also go beyond word meanings. The rules of grammar and syntax, for example, represent shared conventions that assist us in decoding the communications of others.
John F. Manning & Matthew C. Stephenson, Legislation and Regulation 222 (2010).
*65 ¶ 46. These twin pillars of interpretation, context and convention, are indispensable to the functioning of the judiciary. Convention is sometimes realized in part through the implementation of certain "canons of construction," which are "rules of thumb that help courts determine the meaning of legislation." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992). A number of these canons will be discussed in more detail below.
f 47. Context, on the other hand, includes (1) "the purpose of the text," which must be "gathered only from the text itself, consistently with the other aspects of its context"; (2) "a word's historical associations acquired from recurrent patterns of past usage"; and (3) "a word's immediate syntactic setting—that is, the words that surround it in a specific utterance." Scalia & Garner, supra, at 33 (emphasis omitted) (citing I.A. Richards, Interpretation in Teaching viii (1938)).
¶ 48. Application of these principles—an unrelenting focus on the meaning of the text, discovered through a careful examination of context and the application, where necessary, of canons of construction —promotes "certainty, predictability, objectivity, reasonableness, rationality, and regularity, which are the objects of the skilled interpreter's quest." Id. at 34 (citing Frederick J. de Sloovère, Textual Interpretation of Statutes, 11 N.Y.U. L.Q. Rev. 538, 541 (1934)). I now turn to the issue of statutory interpretation at the heart of this appeal and, in analyzing it, employ this methodology.
II
¶ 49. Wisconsin Stat. § 146.83(3f)(a) explains that, with certain exceptions, "if a person requests copies of a patient's health care records, provides *66 informed consent, and pays the applicable fees under par. (b), the health care provider shall provide the person making the request copies of the requested records." § 146.83(3f)(a). Wisconsin Stat. § 146.83(3f)(b), in turn, establishes the "applicable fees," including, as relevant here, the following two fees: (1) "If the requester is not the patient or a person authorized by the patient, for certification of copies, a single $8 charge"; and (2) "If the requester is not the patient or a person authorized by the patient, a single retrieval fee of $20 for all copies requested." § 146.83(3f)(b)4.-5. (emphases added). In this case, Carolyn Moya's ("Moya") personal injury attorney obtained written consent from Moya to receive copies of her health care records. Moya claims her attorney is therefore a "person authorized by the patient" and thus exempt from these fees.
f 50. "Person authorized by the patient" is defined in Wis. Stat. § 146.81(5) as follows:
[T]he parent, guardian, or legal custodian of a minor patient, as defined in s. 48.02(8) and (11), the person vested with supervision of the child under s. 938.183 or 938.34(4d), (4h), (4m), or (4n), the guardian of a patient adjudicated incompetent in this state, the personal representative, spouse, or domestic partner under ch. 770 of a deceased patient, any person authorized in writing by the patient or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2), except as limited by the power of attorney for health care instrument. If no spouse or domestic partner survives a deceased patient, "person authorized by the patient" also means an adult member of the deceased patient's immediate family, as defined in s. 632.895(1)(d). A court may appoint a temporary guardian for a patient believed incompetent to consent *67 to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient.
§ 146.81(5) (emphasis added).
¶ 51. Moya and the court rely on the emphasized text for their conclusion that Moya's attorney fits the definition of "person authorized by the patient." At the outset, it should be noted that it is not clear whether the phrase "any person authorized in writing by the patient" in Wis. Stat. § 146.81(5) is a standalone category or whether it is connected to the following phrase, namely "or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)." § 146.81(5). Healthport contends that this court need not resolve this issue, and I agree. As I will demonstrate, whether read as constituting its own category or read in conjunction with the phrase that follows it, the phrase "any person authorized in writing by the patient" does not include Moya's attorney.
¶ 52. More generally, it is apparent that the mention of lawyers is completely absent from this statutory definition and, instead, the categories of individuals in the statute have the commonality of those people who can legally act and make decisions when the patient cannot; that is not what a personal injury lawyer does. Lawyers are not like the other categories of individuals listed. While lawyers may advocate on behalf of their clients, they are ultimately subject to their clients' direction. The categories of individuals in Wis. Stat. § 146.81(5), on the other hand, are composed of individuals who stand in the shoes of a patient and make decisions for the patient, but are not those who simply advocate for a client at the client's direction.
*68 III
f 53. Also important is a recognition that, as noted by Healthport, the definition of "person authorized by the patient" provided in Wis. Stat. § 146.81(5) does not clearly define the nature of the "authori[ty]" provided by the patient to the person authorized by the patient. The circuit court determined that, for purposes of Wis. Stat. § 146.83(3f)(b), the authority was the authority to inspect a patient's health care records. Moya, 366 Wis. 2d 541, ¶ 4. The court of appeals concluded that the authority was the authority to consent to the release of a patient's health care records. Id., ¶ 16.
¶ 54. Review of Wis. Stat. § 146.81(5) makes apparent that the definition of "person authorized by the patient" provided therein has a common focus on categories of people who are authorized by law to act as the patient, not just act because the patient vested them with limited authority to obtain records. Those included in the statutory definition include those such as "the parent... of a minor patient," for instance, or "the guardian of a patient adjudicated incompetent in this state," but the statute does not explicitly describe what type of authority these people possess. § 146.81(5). The kind of authority vested by law in these people is far different than the kind of obligations a lawyer takes on in representing a person in a lawsuit. These people listed are those who could sign a release that would authorize the lawyer to get the records. The lawyer, unlike those listed in § 146.81(5), could not, for example, sign the form on behalf of the patient as all these individuals could do.
f 55. These observations are relevant to the plain meaning of "any person authorized in writing by *69 the patient" in Wis. Stat. § 146.81(5). A person who states "I have been authorized in writing" has said nothing about what she has been authorized to do. For example, a person who has been authorized in writing to speak on a patient's behalf is technically a "person authorized in writing by the patient," see § 146.81(5), but no one would argue that this type of person would fulfill the definition of "person authorized by the patient" in Wis. Stat. § 146.83(3f)(b). Those listed in the statute, however, have in common, for example, the authority vested in them by law. In sum, examination of the phrase "any person authorized in writing by the patient" in § 146.81(5) in isolation is not sufficient to decide this case.
¶ 56. The court defines the nature of the authority in Wis. Stat. § 146.81(5) differently depending on in which portion of chapter 146 that phrase is used.[2] So because, in the context of Wis. Stat. § 146.83(3f), the "person [potentially] authorized by the patient" is "request[ing] copies of a patient's health care records," § 146.83(3f)(a), the definition of "person authorized by the patient" in that portion of the statutes, in the court's view, is "person authorized by the patient to obtain the patient's healthcare records" (as long as, pursuant to § 146.81(5), that authorization is written authorization). But any person who obtains records this way would need written authorization.
*70 ¶ 57. In other words, the court simply concludes that because Moya's attorney was "authorized in writing" to receive copies of Moya's health care records, he is a "[p]erson authorized by the patient" as defined in Wis. Stat. § 146.81(5), which definition applies to the fee portion of the statutory scheme, Wis. Stat. § 146.83(3f)(b). See § 146.81. That interpretation possesses the benefit of being uncomplicated, but that does not mean it is correct. The court's reading fails to account for a number of important considerations— namely, significant clues provided by investigation of the statutory context and the application of canons of construction—which counsel a different reading of the statute.
f 58. More specifically, the court's conclusion falls prey to a criticism directed at Moya by Health-port:
Although [Moya] repeatedly urges this Court to follow the "plain language" or "plain meaning" of the statutory words, she fails to provide a reason why her proposed interpretation follows from those words. Instead, [Moya] simply assumes that the legislature meant to say "any person authorized in writing by the patient to obtain that patient's health care records." A plain language argument that simply assumes the addition of a critical clause is not a plain language argument at all.
¶ 59. The truth of the matter is that the statutory phrase "any person authorized in writing by the patient," viewed alone, simply does not provide enough information for the court to reach a conclusion in this case. But statutory interpretation requires more than simply looking at a set of words in total isolation. The *71 court must look to something more—the context of the phrase and applicable canons of constructions—to reach the correct answer.
f 60. Before discussing how these tools help establish the plain meaning of this phrase in this statute, I explain how these tools immediately demonstrate a number of significant deficits in the court's approach. First, the phrase "person authorized by the patient" must require more in the context of Wis. Stat. § 146.83(3f) than the court says it does because, with a few exceptions, "a person request[ing] copies of a patient's health care records" under that provision must additionally "provide [] informed consent" in order to obtain the records. § 146.83(3f)(a). Informed consent under the statute "means written consent to the disclosure of information from patient health care records to an individual, agency, or organization that includes" specified pieces of information such as the patient's name and the signature of the patient or the person authorized by the patient. Wis. Stat. § 146.81(2). Therefore, under the court's interpretation, nearly every person who obtains health care records under § 146.83(3f) will, by nature of the informed consent they must provide, automatically be a "person authorized by the patient" and thus, virtually no one will ever pay certification or retrieval fees as called for by the statute.
¶ 61. If the court were correct and all one needed to become a "person authorized by the patient" was informed consent, then there would be no need for a statutory definition of "person authorized by the patient." A person possessing informed consent and a "person authorized by the patient" must therefore be very different individuals possessing different degrees of authority. See, e.g., Pawlowski v. Am. Family Mut. Ins. Co., 2009 WI 105, ¶ 22, 322 Wis. 2d 21, 777 *72 N.W.2d 67 ("As a basic rule of statutory construction, we endeavor to give each statutory word independent meaning so that no word is redundant or superfluous. When the legislature chooses to use two different words, we generally consider each separately and presume that different words have different meanings."). The reason that both informed consent and separate authorization are required in this statutory scheme is because the individuals exempted from the statutory fees at issue are either patients or those who are essentially the equivalents of patients. The legislature defined "person authorized by the patient" to mean individuals that could actually step in and make decisions for the patient. In contrast, lawyers are advocates but they do not step in and become the decision-maker; in fact, it is unethical for them to do so.
¶ 62. The legislature does not enact a fee statute to collect no fees. While this seems obvious, I need not look to legislative history or some unknown possible intent; I need only look at the words of the statute. And this is where context and canons of construction provide guidance. It is a "well-established canon[] of statutory construction" that "[statutory interpretations that render provisions meaningless should be avoided." Belding v. Demoulin, 2014 WI 8, ¶ 17, 352 Wis. 2d 359, 843 N.W.2d 373; see also, e.g., United States v. Tohono O'Odham Nation, 563 U.S. 307, 315 (2011) ("Courts should not render statutes nugatory through construction."); Louisville Water Co. v. Clark, 143 U.S. 1, 12 (1892) ("Any other interpretation of the act. . . would render it inoperative for the purposes for which, manifestly, it was enacted."); Kalal, 271 Wis. 2d 633, ¶ 46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). The court's approach virtually *73 guts the possibility of collecting fees and certainly contravenes fairly basic canons of construction.[3]
f 63. Another flaw in the court's reading of the relevant statutes is that the language of Wis. Stat. § 146.81(5) does not mention lawyers at all but lawyers are exempted in other sections. "Under the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'" FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶ 27, 301 Wis. 2d 321, 733 N.W.2d 287 (alteration in original) (quoting Perra v. Menomonee Mut. Ins. Co., 2000 WI App 215, ¶ 12, 239 Wis. 2d 26, 619 N.W.2d 123). The legislature was fully capable of adding lawyers to the definition of "person authorized by the patient," but it did not do so.
*74 ¶ 64. A third problem with the court's interpretation stems from the language of the legislature's 2014 enactment of 2013 Wisconsin Act 342, which in turn created Wis. Stat. § 146.83(1b). Importantly, this statute further defined those who are exempt from payment. Section § 146.83(1b) provides:
Notwithstanding s. 146.81(5), in this section, a "person authorized by the patient" includes an attorney appointed to represent the patient under s. 977.08 [a section in the chapter pertaining to the State Public Defender] if that attorney has written informed consent from the patient to view and obtain copies of the records.
§ 146.83(1b) (emphasis added). "Notwithstanding" the definition of "person authorized by the patient" means "in spite of' the definition of "person authorized by the patient." Notwithstanding, Black's Law Dictionary 1231 (10th ed. 2014) (emphasis added). It would be strange indeed for the legislature to have used the word "notwithstanding" if, as is suggested by the court's opinion, these attorneys already met the definition of "person authorized by the patient" in Wis. Stat. § 146.81(5) prior to the enactment of § 146.83(lb). Put differently, the legislature's recent amendment strongly indicates that individuals like Moya's attorney are not included in the definition of "person authorized by the patient." If lawyers who received authorization in writing were included in § 146.81(5), § 146.83(1b) would be surplusage and completely unnecessary.
f 65. The amendment in Wis. Stat. § 146.83(1b) provides similar guidance when viewed in light of any of a number of canons of construction. One such canon has already been referenced: "Statutory language is read where possible to give reasonable effect to every *75 word, in order to avoid surplusage." Kalal, 271 Wis. 2d 633, ¶ 46. As Healthport points out, " [i]f the definition of 'person authorized by the patient' already included attorneys with an informed consent, the new section 146.83(1b) would be wholly superfluous." Indeed it would.
¶ 66. Again, "[u]nder the doctrine of expressio unius est exclusio alterius, 'the express mention of one matter excludes other similar matters [that are] not mentioned.'" FAS, LLC, 301 Wis. 2d 321, ¶ 27 (alteration in original) (quoting Perra, 239 Wis. 2d 26, ¶ 12). That is, the legislature obviously could have expanded the reach of Wis. Stat. § 146.83(1b) to include personal injury attorneys, but it did not do so. Similarly, " [n]oth-ing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered." Scalia & Garner, supra, at 93 (describing this as the "Omitted-Case Canon"). Under this principle, a judge should not, among other things "elaborate unprovided-for exceptions to a text." Id.; see also id. ("[I]f the Congress [had] intended to provide additional exceptions, it would have done so in clear language." (alterations in original) (quoting Petteys v. Butler, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting))). This is exactly what the court may be read to do in concluding that Moya's attorney is exempt from the fees at issue. This court should not be acting where the legislature has declined to do so.
¶ 67. Accordingly, the court's interpretation of Wis. Stat. § 146.83(3f)(b) possesses substantial flaws, and I cannot agree with it. Fortunately, it is not the only interpretation presented in this case. Again, it is important to recognize that Wis. Stat. § 146.81(5) does not clearly define the nature of the "authority]" pro *76 vided by the patient to the person chosen by the patient; the statute instead lists categories of individuals. In order to determine the nature of this authority, then, it is again beneficial to look to context and to apply recognized canons of construction.
¶ 68. Two related canons of construction, noscitur a sociis and ejusdem generis, are particularly helpful here. Pursuant to the noscitur a sociis canon of construction, "[a]n unclear statutory term should be understood in the same sense as the words immediately surrounding or coupled with it." State v. Quintana, 2008 WI 33, ¶ 35, 308 Wis. 2d 615, 748 N.W.2d 447 (quoting Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶ 40, 270 Wis. 2d 318, 677 N.W.2d 612). That is, it is reasonable to ascertain the meaning of the phrase "person authorized by the patient" by analyzing the phrase in light of the surrounding categories enumerated in the definition. See Moya, 366 Wis. 2d 541, ¶ 12; see also Kalal, 271 Wis. 2d 633, ¶ 46 ("Context is important to meaning.").
f 69. As explained, none of the enumerated categories in Wis. Stat. § 146.81(5) consists of attorneys. Further, the phrase "any person authorized in writing by the patient" is placed in the middle of the list rather than at its end; therefore, it does not seem to be an expansion of the categories previously listed to new categories of people, nor does it seem to be an extension of the previously listed categories to include a host of new categories. See, e.g., State v. Givens, 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965) ("When the statute, after the specific enumerations, in a 'catchall' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' this must mean conduct of a *77 type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.").
f 70. In fact, if I consult the noscitur a sociis canon of construction, it depends upon whether the enumerated persons in Wis. Stat. § 146.81(5) possess a "similar meaning." Quintana, 308 Wis. 2d 615, ¶ 35. If the various categories are unrelated, then one would presume that the individual categories should be interpreted broadly. See id. Conversely, if the various categories are related, then the "authori[ty]M provided by the patient to the person chosen by the patient in § 146.81(5) should be understood in light of the characteristics shared by each category. See id. As was previously discussed, the categories of individuals listed have in common the fact that they become decision-makers for the patient. Thus, we further conclude that the phrase "person authorized by the patient" is not to be construed as expansive.
¶ 71. Additionally, a related canon of construction, ejusdem generis, "instructs that when general words follow specific words in the statutory text, the general words should be construed in light of the specific words listed" such that "the general word or phrase will encompass only things of the same type as those specific words listed." Id., ¶ 27 (citing Adams Outdoor Advert., Ltd. v. City of Madison, 2006 WI 104, ¶ 62 n. 15, 294 Wis. 2d 441, 717 N.W.2d 803). But if "[t]he specific terms listed in the statute have no common feature or class from which one could ascertain an intention to restrict the meaning of the general term," then "the general terms should be interpreted broadly to give effect to the legislature's intent." Id., ¶¶ 26, 28, 31-32; see also Scalia & Garner, supra, at 101 (under the "General-Terms Canon," "[g]eneral *78 terms are to be given their general meaning (generalia verba sunt generaliter intelligenda)," so long as there is no "indication to the contrary"). So again, because the categories of individuals have in common the fact that they become decision-makers for the patient, the words are not expansive.
¶ 72. Consequently, it is important to ascertain whether there are similarities between the categories of individuals listed in Wis. Stat. § 146.81(5). If there are similarities, this would indicate that the "author-i[ty]" granted in § 146.81(5) should be interpreted more narrowly and more exclusively; if there are no similarities, then this "authority]" should be interpreted more broadly and less exclusively.
¶ 73. Wisconsin Stat. § 146.81(5) defines "[pier-son authorized by the patient" to include individuals acting on behalf of: (1) minor patients; (2) patients who have been adjudicated incompetent; (3) deceased patients; and (4) incapacitated patients. § 146.81(5). One might argue that the legislature envisioned a certain commonality among these categories of individuals. And indeed, the court of appeals, comparing Moya and her personal injury attorney to these other pairs of individuals, interpreted "authorized" in the phrase "person authorized by the patient" to mean "having the power to consent to the release of the patient's records," rather than merely the power to receive those records. Moya, 366 Wis. 2d 541, ¶ 16 (emphasis added); see also § 146.81(5) ("A court may appoint a temporary guardian for a patient believed incompetent to consent to the release of records under this section as the person authorized by the patient to decide upon the release of records, if no guardian has been appointed for the patient." (emphasis added)). The court of appeals concluded that adoption of Moya's argument *79 would violate the manifest purpose of the relevant statutes, expanding the definition of "person authorized by the patient" beyond the "very specific list of individuals" contemplated by the legislature. See Moya, 366 Wis. 2d 541, ¶ 12.
¶ 74. The interpretation of the court of appeals is reasonable. It better comports with the other enumerated categories of persons in Wis. Stat. § 146.81(5). It possesses none of the major defects of the court's interpretation which I identified above. And it is supported by the statutory context and by canons of construction. And this holds true whether "any person authorized in writing by the patient" is read as a standalone category or together with the following clause. If read as a standalone category, "any person authorized in writing by the patient" would clearly not be intended as a broad, "catch-all" group, because it would not fall at the end of the list of enumerated categories; and if read together with the following clause ("or a health care agent designated by the patient as a principal under ch. 155 if the patient has been found to be incapacitated under s. 155.05(2)," § 146.81(5)), then "any person authorized in writing by the patient" would share the characteristics of the other enumerated categories and would not be intended to include attorneys. These canons certainly point strongly in one direction: against the reading adopted by the court.
f 75. The court does not adequately address the reading dictated by application of the interpretative methodology discussed above; as a result, its reasoning is unpersuasive. It also does not explain why Wis. Stat. § 146.83(1b) would be necessary to exempt public defenders from the payment of these fees because public defenders, as virtually all others, would need written *80 authorization to obtain the patient's records in the first instance. The court adopts a more expansive interpretation, but seems to base its interpretation on language that does not have support in common tools of construction. In my view, little or nothing in the statutory text supports the court's expansive view.
¶ 76. On balance, I must conclude that the interpretation adopted by the court today is unlikely to be the correct answer. If the statute at issue is really as broad as the court says it is, the challenged fee requirements are rendered largely meaningless. I cannot accept that a plain meaning here was intended to exempt virtually all who obtain records from payment of the fees set forth.
¶ 77. The clear purpose of the statute, as "gathered . . . from the text itself," is to charge certain individuals fees. Scalia & Garner, supra, at 33. Very simply stated, since nearly anyone who wishes to receive a patient's records needs that patient's authorization and no such authorized person would ever need to pay the applicable fee, virtually no fees would be paid under this statute. It is not as though an attorney, appropriately authorized, could never fit the definition of "person authorized by the patient." But every attorney does not fit that definition, and an examination of the text reveals that Moya's attorney does not fit that definition.
¶ 78. Finally, given the competing interpretative possibilities here, a point about judicial restraint is appropriate. Even if it intuitively makes sense that personal injury lawyers should not have to pay fees to receive their clients' medical records, if I am incorrect, the legislature could easily amend the statute as it did with Wis. Stat. § 146.83(1b) thereby excluding the *81 public defenders. The legislative "fix," if the court is incorrect, requires a virtual rewrite of these fee statutes.
IV
¶ 79. Interpretation of the statutory text leads me to conclude, like the court of appeals, that Moya's personal injury attorney is not a "person authorized by the patient" under Wis. Stat. § 146.83(3f)(b). Regardless, it would be well worth the legislature's time for it to clarify these statutes so as to provide guidance to the public, to lawyers, and to the courts. In the absence of such guidance, however, I must respectfully dissent.
f 80. For the foregoing reasons, I respectfully dissent.

 Those attorneys advocate on behalf of the client/patient and may receive authority from a client to, for example, settle a case; importantly, however, such attorneys, unlike those persons in Wis. Stat. § 146.81(5), are not standalone decision-makers who act with or without the patient's consent.

 Typically, the "[p]resumption of consistent usage" canon would instruct that "[a] word or phrase is presumed to bear the same meaning throughout a text." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 170 (2012). In the court's defense, however, it may not be necessarily in violation of that canon because the nature of the authority, while changing, changes to attend to the purpose of the specific statute.

 It is true that Wis. Stat. § 146.82(2) contains a list of entities that may obtain health care records without informed consent under certain circumstances, such as (generally speaking) emergency medical services personnel assisting a patient, district attorneys prosecuting alleged child abuse, and courts conducting termination of parental rights proceedings. See § 146.82(2)(a)2., 11.-11m. I do not find compelling the argument that the certification and retrieval fees in Wis. Stat. § 146.83(3f)(b)4.-5. are reserved for this specialized subset of requesters. If the legislature had intended such a result, it could have provided for it much more clearly.
Further, it may well be that these entities share common characteristics of which the court is not, at this time, fully aware. For instance, many of the entities listed in this group seem to possess a public interest component, such that a fee for health care records would ultimately be transferred to the taxpayer. Other entities in this group would seemingly include health care providers themselves using health care records for internal matters. See, e.g., Wis. Stat. § 146.82(2)(a)3. (exception provided "[t]o the extent that the records are needed for billing, collection or payment of claims.").