Robert ZWICKER, Henry Haslach, Jr., Bourtai Scudder, Garrett Webb, Robert Cohen, David L. Goldman, Individually and on Behalf of those similarly situated, Plaintiffs,

v.

James BOLL, Individually and as District Attorney of Dane County, Wisconsin, Ralph Hanson, Individually and as Chief of the University of Wisconsin (Madison Campus) Department of Protection and Security, Wilbur H. Emery, Individually and as Chief of Police of the City of Madison, Wisconsin, William L. Buenzli, Individually and as Judge of the County Court (Branch II, Criminal) of Dane County, Franz Haas, Individually and as Sheriff of Dane County, Wisconsin, William C. Sachtjen, Individually and as Judge of the Circuit Court (Branch IV) of Dane County, Wisconsin, The Regents of the University of Wisconsin, and their agents, assistants, successors, employees, and attorneys, Defendants.

No. 67-C-36.

United States District Court
W. D. Wisconsin.

June 6, 1967.

Percy L. Julian, Jr., Madison, Wis., for plaintiffs.

John P. Koberstein, Asst. Dist. Atty., Madison, Wis., for defendant Boll.

Charles A. Bleck, Asst. Atty. Gen., Thomas A. Lockyear, Asst. Atty. Gen., Madison, Wis., for defendants Hanson and The Regents of the University of Wisconsin.

William A. Jansen, Asst. City Atty., Madison, Wis., for defendant Emery.

Glenn L. Henry, Asst. Dist. Atty., Madison, Wis., for defendants Haas, Sachtjen and Buenzli.

Before FAIRCHILD, Circuit Judge, and DOYLE and GORDON, District Judges.

## OPINION

MYRON L. GORDON, District Judge.

This is an action in which plaintiffs seek equitable relief to prevent their being prosecuted by officials of the state of Wisconsin for an alleged violation of Sec. 947.01, Wis.Stats. The Wisconsin statute provides as follows:

"947.01 Disorderly conduct. Whoever does any of the following may be fined not more than $100 or imprisoned not more than 30 days: (1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance."

The state court actions were commenced against these plaintiffs before the latter began the instant action. The state court actions remain pending.

The complaint in this court seeks either a declaratory judgment or interlocutory injunctive relief to enjoin the alleged deprivation of the plaintiffs' rights, privileges and immunities under the United States Constitution.

A temporary restraining order was entered by the U. S. district court enjoining the defendants from further proceedings to enforce Wisconsin Statute 947.01, pending a further order of the court. Then a three-judge court was convened, and a hearing was held on April 17, 1967. At the conclusion of that hearing, this court took under advisement the plaintiffs' request for equitable relief and continued the temporary restraining order. I believe that the plaintiffs' application should be denied and further that the temporary restraining order should be terminated.

The conduct which gave rise to the state court prosecutions, and, subsequently, to the complaint in this court, stemmed from occurrences on February 21 and February 22, 1967, in Madison, Wisconsin. The pleadings disclose conflicting factual claims. There are before us affidavits by the plaintiffs, and also copies of the criminal complaints filed against them in the state court. These documents, together with the other pleadings now before this court, reflect that the plaintiffs were arrested while engaging in protest demonstrations on the campus of the University of Wisconsin in Madison. The plaintiffs expressed their views regarding the war in Vietnam and the use of napalm. The immediate occasion of the protests related to the University's permitting a private company, which manufactures napalm, to conduct employment interviews in campus buildings. Upon their arrest, each was charged with violation of the disorderly conduct statute, and each was released upon bail in the sum of $105.

The plaintiffs contend that they were engaged in the legitimate exercise of their rights of free speech and assembly and that they were doing so by lawful and peaceful means, including picketing and leafletting. The complaints in the state court, appended to the answer in this action, itemize the nature of the alleged disorderly conduct and are specific as to both time and place; they indicate that certain of the plaintiffs, by continued presence in the buildings after requests to leave, and that others of the plaintiffs by loud speech interfered with or interrupted interviews and classes being conducted in the university building.

The plaintiffs contend that Sec. 947.01 of the Wisconsin statutes, on its face, is vague, over broad and also encompasses within its coverage activities which are protected by the first amendment to the United States Constitution. In State v. Givens (1965), 28 Wis.2d 109, 135 N.W. 2d 780, the Wisconsin disorderly conduct statute was challenged as being too indefinite, and that view was rejected with the state court relying upon Lanzetta v. New Jersey (1939), 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888, and Connally v. General Construction Co. (1926), 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322.

Plaintiffs' conduct, according to the state's version, bears some similarity to the conduct involved in the *Givens Case*, where the convictions related to a demonstration within a public building, interfering with the activities usually carried on there, and in deliberate and knowing violation of reasonable regulations of those in charge of the area, reasonably designed to preserve good order and facilitate the public uses for which the building was intended. Although distinguishable, there is some degree of similarity to the facts in Brown v. State of Louisiana (1966), 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (presence within a public building, continued after official direction to leave). In that case, decided after *Givens*, the Supreme Court of the United States reversed convictions under a Louisiana statute.

The pleadings suggest the factual issues between the parties. The dominant legal issue for adjudication is also readily apparent: Is the disorderly conduct statute one which regulates expression, and is it "over broad" so that these plaintiffs

are entitled to an adjudication of invalidity whether or not their own conduct could properly be prohibited by a more specific statute?

The legal and factual issues in this court are the same as those which would have to be resolved in the state court actions if they were permitted to proceed. The nub question is whether it is appropriate for this court to step in and determine these issues first.

Applying common sense principles of comity to the existing situation, I find no compelling reason why this court should assert power to decide these issues in this action and thus displace the state court from a resolution of the same issues in an action already before it.

The seventh circuit court of appeals recently reviewed a challenge to the Illinois disorderly conduct statute. In United States v. Woodard and United States v. Seelig, 376 F.2d 136, decided April 4, 1967, (Cases Nos. 15566 and 15567), the court ruled that the statute was not void for vagueness. The Illinois statute provides, in part, as follows:

"A person commits disorderly conduct when he knowingly * * * does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace."

In analyzing the vagueness argument, the court stated as follows:

"The Constitution does not require impossible standards of specificity in penal statutes. It requires only that the statute convey 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *United States v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). When measured by this criterion, section 26-1(a) (1) of the Illinois disorderly conduct statute does not offend due process.

"The statute proscribes conduct that is so unreasonable as to 'alarm or disturb' another and provoke a 'breach of the peace.' The term 'breach of the peace' has never had a precise meaning in relation to specific conduct. Yet from its early common law origin to the present it has received a fairly well defined gloss. 'The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others.' Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). The term connotes conduct that creates consternation and alarm. It is an indecorum that incites public turbulence; yet violent conduct is not a necessary element.

■ Statutes which intrude upon first amendment rights may be held to be over broad because such freedoms are "delicate and vulnerable, as well as supremely precious in our society." N.A. A.C.P. v. Button (1963), 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405; Thornhill v. State of Alabama (1965), 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093; State v. Smith (1966), 46 N.J. 510, 218 A.2d 147, cert. denied, 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71. However, in the case at bar, there is no reason to believe that Wisconsin is about to punish these plaintiffs for "peacefully expressing unpopular views." Cox v. State of Louisiana (1965), 379 U.S. 536, 551, 85 S.Ct. 453, 13 L.Ed.2d 471. See also Edwards v. S. Carolina (1963) 372 U.S. 229, 237, 83 S.Ct. 680, 9 L.Ed.2d 697.

I would distinguish the type of protest involved in Brown v. State of Louisiana (1966), 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637, from the conduct alleged in the case at bar because in the latter case the demeanor of the protestors was clearly not disorderly. In the *Brown Case,* there was a civil rights issue presented when five Negro men persisted in remaining quietly in a segregated public library. The court noted that their "deportment while in the library was unexceptionable. They were neither loud, boisterous, obstreperous, indecorous nor impolite." It was manifest, said the court in that case, that "they intended

to and did stage a peaceful and orderly protest demonstration * * * "

■■ I believe that upon the charges against the plaintiffs in the case at bar the state is entitled to prosecute them for such conduct even if such conduct occurs at a time when they were enjoying otherwise protected constitutional privileges, unless there is reason to believe that their being prosecuted is a mere pretext for the denial of such privileges. In other words, one may not be convicted for disorderly conduct under a statute such as that in Wisconsin merely because he espouses unpopular ideas or merely because others are thereby stimulated to commit disorderly acts; on the other hand, conduct which is in fact disorderly is not insulated because it is perpetrated while engaged in a protest demonstration.

■ I do not read *Givens* as a declaration by the Wisconsin supreme court that the propounding of unpopular views will qualify for conviction under Sec. 947.01 (1). However, if accompanied by any of the conduct proscribed in that statute (e. g. profanity, etc.), the otherwise protected rights can, indeed, qualify for prosecution and conviction. In this sense the Wisconsin disorderly conduct statute cannot be said to regulate expression. In my opinion, the Wisconsin statute and the *Givens* interpretation thereof do not authorize an encroachment on first amendment guarantees. Neither in *Givens* nor in the case at bar is there any reason to believe that the cause espoused by the demonstrators or the contents of the views expressed by them constituted any part of their offense. Upon this interpretation the "possible applications" approach announced in several U. S. supreme court decisions is not involved. N.A.A.C.P. v. Button (1963), 371 U.S. 415, 432, 83 S.Ct. 328, 9 L.Ed.2d 405; Winters v. People of State of New York (1948), 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840.

In People v. Turner (1966), 17 N.Y. 2d 829, 271 N.Y.S.2d 274, 218 N.E.2d 316, the New York court of appeals held that the New York disorderly conduct statute was not unconstitutionally vague as applied to a case in which there was shouting and screaming at a street meeting. On May 8, 1967, the U. S. supreme court dismissed a writ as improvidently granted in the *Turner Case*. Two justices dissented in part upon the ground that first amendment rights were impaired by a "fuzzy" application of the New York disorderly conduct statute. In another recent development, the U. S. supreme court denied review in Burbridge v. State of California, 386 U.S. 1030, 1031, 87 S.Ct. 1475, 18 L.Ed.2d 591, which was a case in which sit-in demonstrators who were convicted of unlawful assembly or disturbing the peace were held to be not entitled to state habeas corpus.

■ The plaintiffs urge that there is an abuse of their rights in the manner in which the statute has been applied in this case. In Dombrowski v. Pfister (1965), 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22, there was a threatened prosecution of a civil rights organization under a Louisiana statute which was restrained in the light of allegations that rights of free expression under the first and fourteenth amendments would be violated by the state's prosecution. In view of *Dombrowski*, a federal court may consider whether a state prosecution projects a threatened trespass upon federally protected rights. I conclude that there is no justification in the case at bar to foreclose the state courts from conducting their normal adjudication of the constitutional defenses which have been raised in this case.

■ *Dombrowski* requires a federal court to enjoin threatened state prosecution when there is reason to believe that the state's action will have a "chilling effect" upon a citizen's exercise of his rights under the first and fourteenth amendments. In that manner, the case preserves the viability of dissent within a free society. However, I do not interpert *Dombrowski* as directing a federal court to use its injunctive power to stay state proceedings in the absence of reason to believe that there is or will be such an abuse.

There is a difference between allegation of wrong and evidence or color of wrong. Rights guaranteed under the first amendment are "not absolute at all times and under all circumstances." Chaplinsky v. State of New Hampshire (1942), 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1034. In Cox v. State of Louisiana (1965), 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471, Mr. Justice Goldberg said:

"The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy."

The materials presently before this court convince me that precipitous federal court interference with the enforcement of Wisconsin's disorderly conduct statute in the cases at bar would be an unwise intrusion upon Wisconsin's good faith administration of its criminal laws.

The plaintiffs have alleged bad faith on the part of the defendants. They also claim that irreparable injury will result from their being prosecuted. In my view, notwithstanding these allegations, there are no special circumstances to justify short-cutting the normal adjudication of the constitutional defenses which may be advanced in the course of a criminal prosecution.

In view of the fact that the plaintiffs have failed to show that the Wisconsin statute is unconstitutional on its face and, further, in view of a reluctance to grant injunctive relief upon the showing which has been made in this case, I do not believe that it is necessary to resolve the abstention question presented by the application of 28 U.S.C. § 2283. The so-called anti-injunction statute provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

It is urged that 42 U.S.C. § 1983, the Federal Civil Rights Act, permits a federal court to grant injunctions under Sec. 2283. Notwithstanding Goss v. State of Illinois (1963), 7 Cir., 312 F.2d 257 and Smith v. Village of Lansing (1957), 7 Cir. 241 F.2d 856, the plaintiffs contend that the *Dombrowski Case* permits the federal courts to enjoin proceedings in state courts. However, in a footnote at P. 484 in the *Dombrowski Case,* the court stated that such question was left undecided. Cf. Cameron v. Johnson, (1965), 381 U.S. 741, 85 S.Ct. 1451, 14 L.Ed.2d 715. In my view, it is not necessary to determine in this case whether Sec. 1983 is an exception to Sec. 2283.

Although the matter was presented at the hearing in terms of an application for interlocutory injunction, the reasons for which such application is denied would inexorably require denial of a permanent injunction and declaratory relief as well. I believe that judgment should be entered denying the application for interlocutory injunction, vacating the temporary restraining order, and dismissing the action on its merits.

FAIRCHILD, Circuit Judge.

I concur with Judge Gordon in the disposition of the case. I agree with much that he has ably stated, but I reach the result by a somewhat different path.

I express no final view upon any of the constitutional claims asserted by plaintiffs. They will be free to raise them anew in defense of the state court actions, without prejudice by reason of decision here. I go only so far as to conclude that sec. 947.01, Wis.Stats., is not, in the light of any decision of the Supreme Court of the United States, so clearly unconstitutional under the first and fourteenth amendments as to make it appropriate for this federal court so to

declare notwithstanding the opportunity of plaintiffs to litigate the same issue in actions already before the state court when this action was begun.

In my view an act of Congress, 28 U.S.C. § 2283, even when read together with 42 U.S.C. § 1983, forbids this court from staying the state court actions, and impliedly, at least admonishes us, if it does not prohibit us from superseding, in effect, the state court resolution of these federal issues by issuing a declaratory judgment.[1]

Sec. 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

There is no act of Congress which specifically authorizes stay of state court proceedings in an action of this type. If any authorization can be found, it must be read out of 42 U.S.C.A. § 1983, as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

In considering whether sec. 1983 authorizes an injunction against state court proceedings, I would distinguish between a state court proceeding which will serve to adjudicate reasonably debatable legal issues, as well as issues of fact, and a state court proceeding which, because of the patent invalidity of the statute in-

volved or some other demonstrated reason, would be merely an instrument in a program of abuse by state officers of federal constitutional rights.

Where there appear to be debatable constitutional issues, I do not think that a plaintiff's claim before the federal court that a judgment against him on those issues in state court will violate his federal rights is enough to cause the federal court to decide the claim. It should be presumed, unless clearly shown to the contrary, that the state court will deal as carefully with federal rights as would we.

█ Plaintiffs' principal foundation for their attack on the state disorderly conduct statute is the doctrine of "overbreadth." This doctrine, as I understand it, applies specially in the area of freedoms protected by the first amendment. It permits a person who has done things the state could properly have forbidden to attack the statute on the ground that its terms not only include his conduct, but include conduct protected by the first and fourteenth amendments.

The heart of the argument here is that a demonstration in support of a point of view is protected, even though the point of view is so abhorrent to onlookers that the onlookers may riot, and that this statute may be construed to apply to a protected demonstration under circumstances where that result is produced. It seems to me, on the other hand, that it is at least arguable that the statute is not concerned with the substance of any idea which may be expressed or advocated by conduct nor with the tendency of such expression or advocacy to provoke a disorderly reaction by bystanders who are offended, except in the limited fields of indecent or profane conduct.[2]

And I know of no decision of the United States Supreme Court which de-

---

1. See Great Lakes Dredge & Dock Co. v. Huffman (1943), 319 U.S. 293, 299, 63 S.Ct. 1070, 87 L.Ed. 1407, and H. J. Heinz Co. v. Owens (9th Cir. 1951), 189 F.2d 505, 509, cert. den. 342 U.S. 905, 72 S.Ct. 294, 96 L.Ed. 677.

2. If material, examination of the appellants' briefs in State v. Givens (1965), 28 Wis.2d 109, 135 N.W.2d 780, discloses that the doctrine of overbreadth, as distinguished from vagueness-as-lack-of-notice, was not presented to the court.

termines, upon the overbreadth rationale, that a substantially identical statute is wholly invalid.

The American Law Institute is preparing a Study of the Division of Jurisdiction Between State and Federal Courts, and formulating provisions on that subject for possible inclusion in the Judicial Code. Proposed sec. 1372 [3] is an attempt at restatement of existing sec. 2283 as interpreted by the courts. It would prohibit an injunction to stay proceedings in a state court, except in seven enumerated types of cases. Exception (7) would permit an injunction, if otherwise warranted, where "the injunction is to restrain a criminal prosecution that should not be permitted to continue either because the statute or other law that is the basis of the prosecution plainly cannot constitutionally be applied to the party seeking the injunction or because the prosecution is so plainly discriminatory against one who has engaged in conduct privileged under the Constitution or laws of the United States as to amount to a denial of the equal protection of the laws."

A reporter's note indicates: "Exception (7) goes beyond present law to permit an injunction in certain civil rights cases where the very existence of a state prosecution may have a chilling effect on others who wish to exercise rights guaranteed by the Constitution of the United States. * * *"

A portion of the reporter's commentary [4] hereinafter quoted, exactly expresses the caution which I feel must be observed even if the provisions of 42 U.S.C. § 1983 be deemed to open up a civil rights exception to present 28 U.S.C. § 2283.

"* * * The exception covers two classes of cases. The first is those in which the prosecution must ultimately fail because it is plain that the statute or other law that is the basis of the prosecution cannot constitutionally be applied to the party seeking the injunction. This covers both statutes plainly invalid on their face and statutes that are generally valid but that cannot be applied to the defendant in the criminal proceeding because his conduct is plainly privileged under federal law. The word 'plainly' is of importance. An injunction should not issue unless the constitutional question involved has been authoritatively determined with regard either to the particular statute in question or one that is indistinguishable from it."

JAMES E. DOYLE, District Judge (dissenting).

In my view, Sec. 947.01(1), Wis.Stats., as construed in State v. Givens, 28 Wis.2d 109, 135 N.W.2d 780 (1965), is invalid on its face because it is overly broad. It encompasses within its prohibition forms of expression which are protected by the First and Fourteenth Amendments to the Constitution of the United States.

In *Givens* it was contended that on its face Sec. 947.01(1) was fatally vague because it condemns "otherwise disorderly conduct." To meet this challenge, the Court gave content to "otherwise disorderly conduct" by construing it to mean conduct "having a tendency to disrupt good order and to provoke a disturbance." 28 Wis.2d, at 115, 135 N.W.2d, at 784. To be prohibited, the conduct need not be violent, abusive, indecent, profane, boisterous, or unreasonably loud; it need only have a tendency to disrupt good order and to provoke a disturbance. *Givens* has been so read by the Wisconsin Board of Criminal Court Judges in its model instruction for disorderly conduct cases. Model instruction 1900 (Wisconsin Jury Instructions—Criminal, volume 2, 1966), citing *Givens*, includes this sentence: "Conduct is disorderly although it may not be violent, abusive, indecent, profane, boisterous or unreasonably loud; if it is of a type which tends to disrupt good order and provoke a disturbance." The words of the Supreme

---

**3.** P. 31–32 of Tentative Draft No. 5 of the Study.

**4.** P. 184 of Tentative Draft No. 5 of the Study.

Court of Wisconsin in *Givens* are as much a part of the statute as if the legislature had put them there. Winters v. People of State of New York, 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948); Albertson v. Millard, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983 (1953).

These plaintiffs are not required to show that their conduct, which is the subject of the criminal actions pending against them in the state courts, could not be made punishable by a properly drawn statute. It is enough that Sec. 947.01(1), as construed in *Givens*, may be applied to conduct protected by the First Amendment. "For in appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts beyond that at bar. Thornhill v. State of Alabama, 310 U.S. 88, 97-98, 60 S.Ct. 736, 741-742, 84 L.Ed. 1093; Winters v. New York, supra, at 518-520, 68 S. Ct. 665, 671-672, 92 L.Ed. 840. Cf. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302." N.A.A. C.P. v. Button, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963). See Aptheker v. Secretary of State, 378 U.S. 500, 516-517, 84 S.Ct. 1659, 12 L. Ed.2d 992 (1964). Thus, we need accept neither the allegations of the complaint in this court with respect to what the plaintiffs were actually doing at the times and places in question, nor the allegations of the answer in this court on that subject, nor the allegations contained in the criminal complaints or amended criminal complaints against these plaintiffs now pending in the state court. Judge Gordon's description of the alleged conduct of these plaintiffs seems to me irrelevant, as does his comparison of the conduct of the petitioners in Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), with the alleged conduct of the plaintiffs here.

As N.A.A.C.P. v. Button instructs us, we are to take into account "possible applications of [Sec. 947.01(1)] in other factual contexts beyond that at bar." A classic, practical, and realistic example is the conduct of a speaker who expresses his views at an appropriate time and place and in a subdued manner, but whose views so offend his listeners that they are moved to disrupt good order and to effect a disturbance. The same may be true of otherwise discreet and appropriate picketing, standing, or sitting, the significance of which is accurately comprehended by others and resented by them. In my view, applications of Sec. 947.01(1), as construed in *Givens*, to such "factual contexts beyond that at bar" are not only "possible applications" (371 U.S., at 432, 83 S.Ct. at 337); these applications are probable and even necessary applications of a statute which condemns conduct "having a tendency to disrupt good order and to provoke a disturbance."

The Supreme Court of the United States has declared repeatedly that a state may not constitutionally prohibit the expression or advocacy of ideas by conduct which may have a tendency to provoke antagonists to break the peace.

In Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), the petitioner had been found guilty by a jury of violating Chicago's disorderly conduct ordinance which employed the phrase "breach of the peace". The trial court had instructed the jury that breach of the peace consists of any "misbehavior which violates the public peace and decorum"; and that the "misbehavior may constitute a breach of the peace if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm." 337 U.S., at 3, 69 S.Ct. at 895. The Supreme Court reversed the conviction. It held that the instruction to the jury was "as binding on us as though the precise words had been written into the ordinance." Thus, the ordinance as construed "permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a con-

dition of unrest. A conviction resting on *any* of those grounds may not stand." (Emphasis mine.) 337 U.S., at 4-5, 69 S.Ct. at 896.

Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), involved a conviction for the common law crime of breach of the peace. The Court found (372 U.S., at 234, 83 S.Ct. at 683) that in affirming the conviction, the Supreme Court of South Carolina had defined "breach of the peace" as:

> " 'a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence * * *, it includes any violation of any law enacted to preserve peace and good order. It may consist of an act of violence or an act likely to produce violence. It is not necessary that the peace be actually broken to lay the foundation for a prosecution of this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element in the offense * * *.
>
> " 'By "peace," as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality . or community where good order reigns among its members, which is the natural right of all persons in political society.' 239 S.C., at 343-344, 123 S.E.2d, at 249."

The Supreme Court of the United States reversed the conviction. It noted that the petitioners had been "convicted upon evidence which showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection. The Fourteenth Amendment does not permit a State to make criminal the peaceful expression of unpopular views." 372 U.S., at 237, 83 S.Ct. at 684. The Court quoted approvingly from *Terminiello* and declared (372 U.S., at 238, 83 S.Ct. at 685):

> "As in the *Terminiello* case, the courts of South Carolina have defined a criminal offense so as to permit conviction of the petitioners if their speech 'stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand.' Id. [Terminiello v. Chicago, 337 U.S. 1], at 5, 69 S.Ct., [894,] at 896 [93 L.Ed. 1131]."

Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), involved a conviction under a Louisiana "disturbing the peace" statute which provided:

> "Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby * * * crowds or congregates with others * * * in or upon * * * a public street or public highway, or upon a public sidewalk, or any other public place or building * * * and who fails or refuses to disperse and move on * * * when ordered so to do by any law enforcement officer of any municipality, or parish, in which such act or acts are committed, or by any law enforcement officer of the state of Louisiana, or any other authorized person * * * shall be guilty of disturbing the peace." La.Rev.Stat. § 14:103.1 (Cum.Supp.1962).

The Supreme Court considered in detail the specific conduct of the appellant and held that the Louisiana statute could not constitutionally be applied in the particular case. 379 U.S., at 544-551, 85 S.Ct. at 458-462. It then continued (379 U.S., at 551-552, 85 S.Ct. at 462-463):

> "There is an additional reason why this conviction cannot be sustained. The statute at issue in this case, as authoritatively interpreted by the Louisiana Supreme Court, is unconstitutionally vague in its overly broad scope. The statutory crime consists of two elements: (1) congregating with others 'with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned,' and (2) a refusal to move on after having been ordered

to do so by a law enforcement officer. While the second part of this offense is narrow and specific, the first element is not. The Louisiana Supreme Court in this case defined the term 'breach of the peace' as 'to agitate, to arouse from a state of repose, to molest, to interrupt, to hinder, to disquiet.' 244 La., at 1105, 156 So.2d, at 455. In *Edwards*, defendants had been convicted of a common-law crime similarly defined by the South Carolina Supreme Court. Both definitions would allow person to be punished merely for peacefully expressing unpopular views. Yet, a 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech * * * is * * * protected against censorship or punishment * * *. There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.' Terminiello v. Chicago, 337 U.S. 1, 4-5, 69 S.Ct. 894, 896, 93 L.Ed. 1131. In *Terminiello* convictions were not allowed to stand because the trial judge charged that speech of the defendants could be punished as a breach of the peace ' "if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm." ' Id., 337 U.S., at 3, 69 S.Ct., at 895. The Louisiana statute, as interpreted by the Louisiana court, is at least as likely to allow conviction for innocent speech as was the charge of the trial judge in *Terminiello*. Therefore, as in *Terminiello* and *Edwards* the conviction under this statute must be reversed as the statute is unconstitutional in that it sweeps within its broad scope activities that are constitutionally protected free speech and assembly."

The Louisiana statute, thus held invalid on its face as being overly broad, included the phrase: "under circumstances such that a breach of the peace may be occasioned thereby." I consider this language indistinguishable, in terms of overbreadth, from the words "having a tendency to disrupt good order and to provoke a disturbance." Thus, I consider *Cox* unambiguous authority for the proposition that Sec. 947.01(1) is unconstitutional "in that it sweeps within its broad scope activities that are constitutionally protected free speech and assembly." 379 U.S., at 552, 85 S.Ct. at 463.

When Brown v. State of Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), reached the court, it was called upon to deal with another conviction under the Louisiana "disturbing the peace" statute which it had considered in *Cox*. In *Cox* the conduct had occurred on public streets and sidewalks; in *Brown*, in a public library. The court recalled (383 U.S., at 134-135, 86 S.Ct. at 720) that in *Cox* it had invalidated the statute on its face for overbreadth and commented:

"Since the present case was decided under precisely the statute involved in *Cox* but before our decision in that case was announced, it might well be supposed that, without further ado, we would vacate and remand in light of *Cox*. But because the incident leading to the present convictions occurred in a public library and might be thought to raise materially different questions, we have heard argument and have considered the case *in extenso*."

The Court then proceeded to hold that the "public building phase" of the statute (Black, J., dissenting, 383 U.S., at 157, 731; Brennan, J., concurring, 383 U.S., at 144, 725) could not constitutionally be applied to punish the peti-

tioners' actions in the circumstances of this case. Concurring in the judgment (383 U.S., at 143-150, 724-728), Mr. Justice Brennan expressed the view that the Louisiana statute could not properly be considered to consist of two discrete "phases", one dealing with public streets and sidewalks and another with public buildings; therefore, the *Cox* declaration of invalidity for overbreadth felled the whole statute once and for all. Even assuming the correctness of the two-phase analysis, he was of the opinion that the public building phase was itself invalid on its face by reason of over-breadth.

One is left uncertain why neither of the two alternative views of Justice Brennan was accepted by the Court in entering its judgment reversing the convictions in *Brown*. It is clear, however, that the Court's election to invalidate the "public buildings phase" of the statute on other grounds did not signal the death of the overbreadth doctrine. See Elfbrandt v. Russell, 384 U.S. 11, at 18-19, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966). Cf. Ashton v. Kentucky, 384 U.S. 195, 200-201, 86 S.Ct. 1407, 16 L. Ed.2d 469 (1966).

In any event, it is firmly developed law that a state may not constitutionally punish the expression or advocacy of ideas by conduct because "it stirs the public to anger, invites dispute, brings about a condition of unrest, *or creates a disturbance*" (emphasis mine), *Terminiello*, 337 U.S. 1, at 3, 69 S.Ct. 894, at 895, nor may it punish persons "merely for peacefully expressing unpopular views," *Cox*, 379 U.S., at 551, 85 S.Ct. 162. If the "possible applications of the statute," N.A.A.C.P. v. Button, 371 U.S., at 432, 83 S.Ct. at 337, are such that "it sweeps within its broad scope activities that are constitutionally pro-

tected free speech and assembly," *Cox*, 379 U.S., at 552, 85 S.Ct. at 463, the statute must fall. These are the considerations which persuaded the three-judge federal court in Carmichael v. Allen, D.C., 267 F.Supp. 985 (N.D.Ga., Atlanta Division, Civil Action No. 10421, December 13, 1966) that it must declare invalid on its face an Atlanta disorderly conduct ordinance making it unlawful "for any person to act in a violent, turbulent, quarrelsome, boisterous, indecent or disorderly manner, or to use profane, vulgar or obscene language, or to do anything tending to disturb the good order, morals, peace or dignity of the City." [1]

I do not understand either of the judges who constitute a majority here to say that the "possible applications" test, enunciated in N.A.A.C.P. v. Button and elsewhere, is not to be applied in the area of First Amendment freedoms. Nor do I understand either of them to say that a statute would not be invalid on its face if, so tested, it may be applied to prohibit the expression or advocacy of ideas by conduct which has a tendency to provoke a disorderly reaction by antagonized onlookers or bystanders.

Judge Gordon seems to say that the "possible applications" test is inappropriate here because Sec. 947.01(1) does not prohibit conduct unless it both: (1) is violent, abusive, indecent, profane, boisterous, or unreasonably loud; and (2) has a tendency to disrupt good order and to provoke a disturbance. I believe it is not open to us to save Sec. 947.01(1) by a construction which flatly opposes the construction by the Supreme Court of Wisconsin in *Givens*.

Judge Fairchild seems to make two points. The first is "that it is at least arguable that the statute is not concerned

1. I express no opinion concerning the conclusion reached in United States v. Woodard and United States v. Seelig, 376 F.2d 136 (C.A.7th, April 4, 1967, Cases Nos. 15566 and 15567), in which an Illinois disorderly conduct statute was held not void for vagueness. With respect, I do observe that the constitutionality of the statute was not analyzed by the method described in N. A. A. C. P. v. Button, supra. As a three-judge court whose decision is directly reviewable by the Supreme Court of the United States, I believe we are not bound by a decision of the Court of Appeals for the Seventh Circuit.

with the substance of any idea which may be expressed or advocated by conduct nor with the tendency of such expression or advocacy to provoke a disorderly reaction by bystanders who are offended, except in the limited fields of indecent or profane conduct." The second is that when the constitutional issues are "debatable", or when the statute is not marked by "patent invalidity", or when, in the quoted language of the American Law Institute Reporter, the constitutional question involved has not been "authoritatively determined with regard either to the particular statute in question or one that is indistinguishable from it", the three-judge federal court should, and may indeed be compelled to, abstain and permit state court resolution of the federal constitutional issue.

With respect to the first point, it is unclear whether Judge Fairchild refers to the statute as enacted or as construed in *Givens*. Because we must test it as construed in *Givens*, we must consider Judge Fairchild's "arguable" construction as it applies both to conduct described by the six adjectives in Sec. 947.01(1) (violent, abusive, indecent, profane, boisterous, or unreasonably loud) and also to conduct merely "having a tendency to disrupt good order and to provoke a disturbance." Nothing whatever in this latter phrase suggests that if the "tendency" is a function of the substance of any idea expressed or advocated by conduct, then the conduct is excluded from the prohibition. "[W]e will not presume that the statute curtails constitutionally protected activity as little as possible." N.A.A.C.P. v. Button, 371 U.S. 415, at 432, 83 S.Ct. at 337.

Assuming, however—incorrectly, I believe—that we may strain to find an arguable and saving construction of Sec. 947.01(1) which is not inconsistent with *Givens*, the construction suggested does not seem to me to rise to a reasonably minimal level of arguability or debatability. It is conceded that with respect to "indecent" conduct and "profane" conduct, Sec. 947.01(1) does render operative both the substance of ideas expressed

or advocated by conduct, and the tendency of such expression or advocacy to provoke a disorderly reaction by bystanders who are offended. To these two categories must be added "abusive" conduct. In Lane v. Collins, 29 Wis.2d 66, 138 N.W.2d 264 (1965), decided after *Givens*, the Supreme Court of Wisconsin dealt with a city ordinance the provisions of which are said to be (29 Wis.2d, at 71-72, 138 N.W.2d at 267):

> "similar in import to that portion of sec. 947.01(1) * * * which makes it a misdemeanor for a person to engage 'in * * * abusive, indecent, profane * * * conduct * * *' in a public or private place. The underlying reason for disorderly conduct statutes and ordinances proscribing abusive language is that such language tends to provoke retaliatory conduct on the part of the person to whom it is addressed that amounts to breach of the peace. Calling another person a 'son-of-a-bitch' under charged circumstances might well constitute abusive language which is likely to have that result."

Also, to the extent that "violent" conduct may be in the form of speech, and assuming that "violent" means something other than "boisterous" or "unreasonably loud", it appears that substance or content is necessarily an operative factor in determining whether speech is "violent".

Moreover, the suggested construction of the phrase "having a tendency to disrupt good ·order and to provoke a disturbance"—namely, that it is deaf to the substance of ideas expressed or advocated by conduct—would also remove from its ambit conscious incitement of one's sympathizers to break the peace. Such a construction would nearly nullify the phrase "to provoke a disturbance."

Thus, the suggested construction of the phrase would require us: (1) to find in it an implicit, not explicit, limitation upon its scope which is inoperative with respect to three and perhaps four of

the six categories of conduct specifically described in the statute; and (2) to remove from its ambit, for no reason which its words suggest, virtually all expression or advocacy of ideas by conduct. I am obliged to say that such a construction seems to me so lacking in merit as not to be "debatable" or "arguable", for our purposes here.

I conclude that the unconstitutionality of Sec. 947.01(1) is not seriously debatable, that it is patently invalid,[2] and that the constitutional question involved has been authoritatively determined with regard to an ordinance in *Terminiello*, a common law crime in *Edwards*, and a statute in *Cox*, none of which, as construed by jury instructions or by state appellate courts, is significantly distinguishable from Sec. 947.01(1), as construed in *Givens*.

Thus I reach issues which neither member of the majority reaches: May and should this three-judge federal court declare invalid a state criminal statute which clearly violates the First and Fourteenth Amendments, or must or should this court abstain and leave this function to the state courts? If it may and should declare the statute invalid, may and should it also permanently enjoin further proceedings in a pending prosecution in the state courts? I share fully with the other members of this court a powerful disinclination to interfere with the state's administration of its criminal laws, and an awareness that the devotion of the Wisconsin state judiciary to the Constitution of the United States is equal to that of the federal judiciary. However, the circumstances

here do not permit us to indulge so readily our natural disposition to defer to the state courts.

In *Givens,* two state trial courts and the Supreme Court of Wisconsin refrained from practicing the method of constitutional analysis which, in my view, is demanded by *Thornhill, Winters,* N. A. A. C. P. v. Button, *Aptheker,* and other decisions. In *Givens,* the Supreme Court of Wisconsin undertook to fill out the provisions of Sec. 947.01(1) with words which rendered it fatally overbroad. These words are now enshrined in a model jury instruction approved and published by the Wisconsin Board of Criminal Court Judges. I would notice judicially, as I consider us obliged to do, that the state trial courts may be expected to use this model instruction. It comes to this: the strong probability is that the cases of these plaintiffs, and others prosecuted for violations of Sec. 947.01(1), will be governed by the statute as construed in *Givens* and as reflected in the model instructions. On appeal to the Supreme Court of Wisconsin from convictions, it would be necessary for them to persuade that appellate court to engage in a method of constitutional analysis from which it refrained in *Givens,* and then either to change radically the construction enunciated in *Givens,* or to reach a conclusion with respect to the constitutionality of Sec. 947.01(1) which would be inconsistent with, and perhaps contradictory to, the conclusion reached in *Givens.* Failing in all this, they would be left to seek review in the Supreme Court of the United States.

---

**2.** Because I consider Sec. 947.01(1) invalid on the ground explained in this opinion, I refrain from detailed discussion of other possible grounds of invalidity, particularly this declaration in *Givens:* "Those in authority over public buildings or particular areas therein must be accorded discretion to regulate conduct therein. Such regulation must be reasonably designed to preserve good order and facilitate the public uses for which the building was intended. Such regulation

must not, of course, deprive anyone of his constitutional or other legal rights." 28 Wis.2d, at 121, 135 N.W.2d at 787. The court's holding in this respect is not clear. If its holding is that rulemaking may be delegated to custodians of public buildings within only the guidelines just quoted, and that a deliberate and knowing violation of such a regulation constitutes a violation of Sec. 947.01(1), the statute may well be void for vagueness.

Moreover, this is not a situation in which we are properly asked to defer to the state trial courts to permit them to make findings of fact in the particular case and then to shape the statute by application and non-application to these facts or to those. Instead, the state courts at both the trial and appellate level would be obliged to engage in the very analysis of the statute's breadth in which I have engaged here, and, as I see it, to reach the inevitable conclusion that the statute, as construed in *Givens,* is fatally overbroad. Ir short, the only reason to leave to the state courts the opportunity to make this analysis and to reach this conclusion is that, the second time around, the Supreme Court of Wisconsin might discard the *Givens* construction and substitute for it a saving construction of the statute.

Fortunately, we find in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), rather specific guidance in this situation. There (380 U.S., at 483–487, 85 S.Ct. at 1119) the court defined the limited reach of the abstention doctrine enunciated in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324, and declared (at 486–487, 85 S.Ct. at 1120–1121):

> "A criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms. See, e. g., Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205. When the statutes also have an overbroad sweep, as is here alleged, the hazard of loss or substantial impairment of those precious rights may be critical. For in such cases, the statutes lend themselves too readily to denial of those rights. The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded in such cases. See Baggett v. Bullitt, supra, 377 U.S. at 379, 84 S.Ct., at 1326.

For '[t]he threat of sanctions may deter \* \* \* almost as potently as the actual application of sanctions. \* \* \*' NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405. Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser. Cf. Garrison v. State of Louisiana, 379 U.S. 64, 74–75, 85 S.Ct. 209, 215, 216, 13 L.Ed.2d 125. For example, we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Thornhill v. State of Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 741, 742, 84 L.Ed. 1093; NAACP v. Button, supra, 371 U.S. at 432–433, 83 S.Ct., at 337–338; cf. Aptheker v. Secretary of State, 378 U.S. 500, 515–517, 84 S.Ct. 1659, 1668–1669, 12 L.Ed. 2d 992; United States v. Raines, 362 U.S. 17, 21–22, 80 S.Ct. 519, 522–523, 4 L.Ed.2d 524. We have fashioned this exception to the usual rules governing standing, see United States v. Raines, supra, because of the ' \* \* \* danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.' NAACP v. Button, supra, 371 U.S., at 433, 83 S.Ct., at 338. If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation. Cf. Ex parte Young, supra, 209 U.S., at 147–148, 28 S.Ct., at 448–449. By permitting determination of the invalidity of these statutes without regard to the permissibility of some regulation on the facts of particular cases, we have, in effect,

avoided making vindication of freedom of expression await the outcome of protracted litigation. Moreover, we have not thought that the improbability of successful prosecution makes the case different. The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure. See NAACP v. Button, supra, 371 U.S., at 432–433, 83 S.Ct., at 337–338; cf. Baggett v. Bullitt, supra, 377 U.S., at 378–379, 84 S.Ct., at 1326; Bush v. Orleans School Board, D.C., 194 F.Supp. 182, 185, affirmed sub nom. Tugwell v. Bush, 367 U.S. 907, 81 S.Ct. 1926, 6 L.Ed.2d 1250; Gremillion v. United States, 368 U.S. 11, 82 S.Ct. 119, 7 L.Ed.2d 75."

And directly pertinent to the situation presented here, the court held (at 489–490, 85 S.Ct. at 1122):

"The District Court also erred in holding that it should abstain pending authoritative interpretation of the statutes in the state courts, which might hold that they did not apply to SCEF, or that they were unconstitutional as applied to SCEF. We hold the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, statutes are justifiably attacked on their face as abridging free expression * * *."

See Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 (1965).

I conclude that we are not free to abstain from a declaration that Sec. 947.01(1) is unconstitutional because of overbreadth, and I would enter a declaratory judgment to this effect.

In *Dombrowski*, 380 U.S. at 479, n. 2, 85 S.Ct. 1116, 1119, the question was reserved whether 42 U.S.C. § 1983, under which the present action in this court is brought, permits a federal court to stay proceedings in a state court, despite the provisions of 28 U.S.C. § 2283. It appears that the issue—now much in conflict—may be resolved by the Supreme Court reasonably soon. I content myself to say that the logic of the doctrines exemplified in Thornhill, N. A. A. C. P. v. Button, Cox, and *Dombrowski* seems to me to compel the conclusion that an injunction must issue in a case such as the case at bar. The illogic of preventing the institution of, while permitting the continuance of, criminal prosecutions under an invalid statute has been remarked. Douglas, J., dissenting, in City of Greenwood v. Peacock, 384 U.S. 808, 845–846, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, Tentative Draft No. 5, May 2, 1957, pp. 112–113.[3] I would enjoin the continuance of the pending criminal proceedings against these plaintiffs in the state courts.

We are not called upon to categorize today the kinds of "disorderly conduct" which the state may prohibit by a carefully drawn statute; in my view, it can constitutionally prohibit a very considerable range of disorderly conduct. We are called upon only to remind the legis-

---

**3.** The American Law Institute's proposed new sections 1372(7), Tentative Draft No. 5, May 2, 1967, pp. 31–32, and commentary thereon, pp. 184–185 (see also new section 1312(c), p. 9, and commentary thereon, pp. 110–113) appear to me preoccupied with equal protection, as distinguished from First Amendment, situations. This distinction was heavily emphasized in State of Georgia v. Rachel, 384 U.S. 780, 792, 86 S.Ct. 1783, 16 L.Ed. 2d 925 (1966); the Court cited approvingly from People of State of New York v. Galamison, 342 F.2d 255, 269, 271 (C.A.

2d), a passage distinguishing between civil rights stated in terms of racial equality and laws "of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer rights in the sense, vital to our way of life, of bestowing them upon all." Since the "possible applications" method of analysis is deemed appropriate with respect to state criminal statutes affecting First Amendment rights, redefining the relationships between state and federal courts in this area may well be quite as urgent as in the equal protection area.

lature that when it approaches the foothills of First Amendment freedoms, it must step with far greater care than that which marked the enactment of Sec. 947.01(1).