Sydney M. **EISENBERG** and Alan D. Eisenberg, Plaintiffs,

v.

W. Wade **BOARDMAN**, John P. McGalloway, Clarence E. Fugina, Theron P. Pray, George P. Ettenheim, individually and as members of the Wisconsin Board of State Bar Commissioners, the Board of State Bar Commissioners, and George H. Young, Referee, Defendants.

No. 69-C-49.

United States District Court
W. D. Wisconsin.

Aug. 8, 1969.

Lawton & Cates, Madison, Wis., for plaintiffs.

Rudolph P. Regez, Monroe, Wis., for defendants, Warren H. Resh, Madison, Wis., of counsel.

Charles W. Joiner, Detroit, Mich., for amicus curiae Wayne State University Law School.

Before FAIRCHILD, Circuit Judge, and DOYLE and REYNOLDS, District Judges.

FAIRCHILD, Circuit Judge.

Plaintiffs, Sydney and Alan Eisenberg, seek to enjoin a disciplinary proceeding brought against them, as attorneys, in the Supreme Court of Wisconsin. They challenge a portion of the statute defining unprofessional conduct, and seek a declaration that such portion conflicts with the First and Fourteenth Amendments to the Constitution of the United States. The defendants here are members of the Board of State Bar Commissioners, plaintiffs in the disciplinary proceeding, and the referee appointed by the state high court to hear the case and report findings and recommendations.

The Honorable John E. Krueger was a judge of the county court of Milwaukee county (formerly the district court) from January 1961 to August 28, 1968, when he shot and killed himself. The administration of his (traffic) branch of the court was often the subject of controversy. The disciplinary proceedings relate to alleged conduct of the attorneys Eisenberg with respect to Judge Krueger in 1968.[1]

The complaint in the disciplinary proceeding alleges that the attorneys Eisenberg "were guilty of conduct which was unprofessional and such as would serve to bring the Courts of Justice of this state into disrepute and contempt and which was contrary to defendants' duty as licensed attorneys and to the attorney's oath * * * as set forth at Sec. 256.29 Wisconsin Statutes and which oath provides in part as follows:

'I do solemnly swear:

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

'I will maintain the respect due to the Courts of Justice and Judicial Officers;'

"That defendants' conduct consisted of the following:

"(a) That defendants * * * pursued a course of vindictive and reckless harassment and psychological persecution against [Judge Krueger]; * * * they caused to be publicly circulated statements which they knew, or should have known, would reach Judge Krueger to the effect that said Judge was guilty of conduct for which a criminal warrant could be issued; that he would resign from the bench for personal reasons within 60 to 90 days or such warrant would be issued; * * * that defendants' conduct was of such aggravated nature as to cause Judge Krueger great mental suffering and anguish, which culminated in his death by his own hand * * *.

"(b) [our summary: that defendants caused advertisements to be run in newspapers earlier in 1968 soliciting complaints against Judge Krueger.]

"(c) That the course of conduct * * * reached a point that Judge Krueger in desperation appealed to a friend for help; that the friend thereupon became an emissary to appeal to defendants that they desist from their activities; that said emissary was told by defendant Sydney M. Eisenberg that, 'We have so much on him

---

1. The hearings before the referee have been carried on while this action has been pending. We refused plaintiffs' requests to enjoin them *pendente lite*. The testimony brought out before the referee is not part of the record in this action, and we have considered the nature of the proceedings only on the basis of the complaint filed therein.

that we are really going to chop him up'; that in the negotiations that followed the emissary was told by Sydney M. Eisenberg: 'He's (Judge Krueger) going to have to agree to what Alan and I decide'; that in subsequent negotiations between defendants and said emissary a first draft of a press release was dictated by the defendant, Sydney M. Eisenberg, which became, after certain revisions, the press release as read by Judge Krueger * * *.[2]

"(d) That in advance of the issuance and reading of the press release * * * [Alan Eisenberg disseminated copies] * * * to several persons and boastfully read the same aloud in public and stated that if Judge Krueger did not read it Monday morning, he would be off the bench within 60 to 90 days and suggested to several persons that they be present * * * to witness the issuance of the press release.

"(e) That by the course of the conduct alleged * * * Judge John E. Krueger was forced by defendants to humiliate himself and the Court by * * * [reading the press release in open court August 26, 1968] * * *; that said press release and the ceremony at its issuance were designed to humiliate Judge Krueger, to aggrandize defendants * * * and to demonstrate publicly defendants' successful subjugation of Judge Krueger."

I. *The attack on the statute.*

Sec. 256.29(1), Wis.Stats., prescribes the oath or affirmation required of every attorney. The oath includes an obligation to "maintain the respect due to courts of justice and judicial officers". Sec. 256.29(2) declares it to be unprofessional conduct and grounds of disbarment for any attorney to violate any provision of the oath.

As we understand plaintiffs' position it is that the attorney's obligation to maintain respect due to judicial officers is open to the construction that the attorney must not make derogatory statements concerning a judge or engage in other expression of similar effect. It is claimed that being open to such construction, the provision is overbroad and has a chilling effect upon the exercise by Wisconsin lawyers of freedom of speech protected by the first and fourteenth amendments.

Persons who make derogatory statements about judges are protected by the first and fourteenth amendments from imposition of civil and criminal liability, unless the statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not."[3] We have no doubt that such protection against imposition of civil or criminal liability extends on the same terms to lawyers, at least for utterances made outside the course of judicial proceedings. Whether a lawyer is protected from imposition of discipline as a lawyer upon identical terms has not been made clear,[4] but we assume, for our present purpose, that some areas of speech by lawyers which might be deemed disrespectful to courts or judges would be so protected.[5]

---

2. The press release is attached to the complaint. In it Judge Krueger announced, among other things, that he had requested three attorneys, the two Eisenbergs and one other, "to act as an advisory committee to assist me in concluding changes which are necessary to bring my Traffic Court in line with the ideals of justice and understanding with the people of Milwaukee County, as well as with the esteemed members of the Milwaukee Bar."

3. New York Times v. Sullivan (1964), 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed. 2d 686; Garrison v. Louisiana (1964), 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed. 2d 125.

4. See Re Sawyer (1959), 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473.

5. See Willner v. Committee on Character and Fitness (1963), 373 U.S. 96, 83 S. Ct. 1175, 10 L.Ed.2d 224, 229; Spevack

We are satisfied, however, that the Supreme Court of Wisconsin has so construed the provision of the oath in question that an attorney may not be disciplined for derogatory expressions (outside of judicial proceedings) concerning a judge or court.[6]

Mr. Cannon, in whose case such construction was pronounced, had been previously suspended from membership in the Wisconsin bar for a period of two years. In 1931 he applied for reinstatement. During the period of suspension he made baseless public charges against certain justices and judges. One of the questions on which the Supreme Court directed inquiry by the bar commissioners was whether his conduct during the period of suspension "gives assurance that if he be re-admitted he will observe the obligations of the legislative oath required of attorneys, with especial reference to that clause which requires an attorney to maintain the respect due to courts of justice and judicial officers."

After noting that Mr. Cannon's right to criticize the courts in his capacity as a private citizen could not be challenged in Wisconsin, but that by reason of his having taken the oath he "was under restraint imposed by proprieties at least which do not rest upon the average citizen", the court "arrived at the conclusion that reinstatement cannot be refused solely upon the ground of his criticism of the courts, and that his attitude in his campaigns can only be considered in so far as it reflects his character, aside and apart from his disposition to criticize the courts * * *." He was awarded reinstatement upon payment of the judgment for costs rendered in the original proceeding.

It is suggested that because Mr. Cannon made the statements referred to at a time when his license to practice was suspended, the decision of the court does not squarely stand for the proposition that a Wisconsin attorney may not be disciplined for derogatory statements concerning judges made while he is an attorney and not under suspension.

The Wisconsin court, however, spoke for itself on that point, as follows:

"We take occasion at this time to express recognition of the right and good citizenship of an attorney who by his public utterances seeks to correct abuses, or what he believes to be abuses, on the part of the judiciary when he is prompted by considerations of public welfare. It is quite a different thing, however, when such a campaign is conducted by a lawyer who cares nothing about public welfare, but whose sole aim and ambition is self-vindication or glorification. We may set it down as a sound abstract proposition that the one is commendable and the other reprehensible. However, who is to say what the motives of such a campaign are? While the motives prompting the campaign of Mr. Cannon may not be difficult of definition, if courts assume to pass upon the motives of a campaign and to punish those who prosecute such a campaign with improper motives, they will be entering upon a field where such a question will not always be so easy of decision. The result will be that all will hesitate to enter upon such a campaign because of the consequences which they may invite by reason of a misconstruction of their motives. *Courts would be entering upon a dangerous field if they assumed to disbar attorneys because of criticism of courts based upon improper motives. It best conforms to the spirit of our institutions to permit every one to say what he will about courts, and leave the destiny of the*

v. Klein (1967), 385 U.S. 511, 516, 87 S. Ct. 625, 17 L.Ed.2d 574; United Mine Workers v. Illinois Bar Ass'n. (1967), 389 U.S. 217, 222, 88 S.Ct. 353, 19 L.Ed.

2d 426. See generally Annot., 12 A.L.R. 3d 1408–1442 (1967).

6. In re Cannon (1932), 206 Wis. 374, 240 N.W. 441.

*courts to the good judgment of the people.* They may err occasionally, but the combined sober judgment of the voters can be relied upon in the long run to protect the courts from calumny, abuse, and unfounded criticism. These considerations lead to the conclusion that Mr. Cannon cannot be refused reinstatement because of his indulgences in criticism of the courts, no matter how unfounded such criticism may have been." [7] (Italics ours.)

That pronouncement of the Supreme Court of Wisconsin is as much a part of the Wisconsin statute as if it had been so amended by the legislature.[8] It wholly meets the challenge of overbreadth. Indeed it seems to extend protection from disciplinary proceedings to some speech which would not be protected from civil or criminal liability under *New York Times* and *Garrison.*

Plaintiffs suggest that the *Cannon* decision has been overruled or limited because in the present disciplinary proceeding the Supreme Court overruled their demurrer to the complaint, and, without prejudice, dismissed their motion to dismiss and motion to strike certain portions of the complaint. We are unable to interpret those rulings as having that effect. As will be seen, the complaint goes beyond a charge of expression derogatory of Judge Krueger.

II. *The attack on the disciplinary proceeding itself.*

■ If the complaint in the disciplinary proceeding alleged only that the Eisenbergs publicly charged Judge Krueger with a criminal offense, predicted that he would resign to avoid prosecution, and solicited people to come forward with information against Judge Krueger, we assume that a demurrer would have been sustained on the authority of *Cannon.*

Conceivably the issuance of a complaint having no merit under state law and seeking to impose discipline for the exercise of first amendment freedom would, if the circumstances showed lack of good faith and irreparable injury, give rise to a cause of action under 42 U.S.C. sec. 1983.[9] A three judge court would not be appropriate were that the sole claim (the attack not being directed at the statute), and the still unresolved question of whether sec. 1983 is to be read as authorizing an injunction staying proceedings in a state court, notwithstanding 28 U.S.C. § 2283, would arise.[10]

We do not, however, read the complaint in the disciplinary proceeding as showing that the proceeding was brought in bad faith for the purpose of harassing the Eisenbergs because of exercise of first amendment freedom or to deter other lawyers from such exercise. There is no allegation that any assertions made about the judge were made "with knowledge that it was false or with reckless disregard of whether it was false or not." As statements made they were protected speech, but the complaint clearly does not stop with charging the making of the statements.

Rather it charges a course of conduct which is alleged to be unprofessional,

---

7. Id. at 408–409, 240 N.W. at 454–455.

8. Winters v. People of State of New York (1948), 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840; Albertson v. Millard (1953), 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983; Zwicker v. Boll (W.D. Wis., 1967), 270 F.Supp. 131, 139, dissenting opinion.

9. See Douglas v. City of Jeannette (1943), 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed.

1324; Dombrowski v. Pfister (1965), 380 U.S. 479, 484, 85 S.Ct. 1116, 14 L.Ed.2d 22; Cameron v. Johnson (1968), 390 U. S. 611, 618, 88 S.Ct. 1335, 20 L.Ed.2d 182.

10. See Dombrowski v. Pfister (1965), 380 U.S. 479, 484, n. 2, 85 S.Ct. 1116, 14 L. Ed.2d 22; Cameron v. Johnson (1968), 390 U.S. 611, 613, n. 3, 88 S.Ct. 1335, 20 L.Ed.2d 182.

and the fact that speech is intermingled with conduct does not endow the conduct with constitutional protection where the state can properly forbid or regulate the conduct as a whole.[11]

The complaint can be reasonably read as charging that the attorneys Eisenberg used the threat of continued exposure and continued harassment to force the judge, unwillingly, to appoint them as an advisory committee concerning the administration of his court and to demonstrate their subjugation of him by public announcement. It is not unreasonable to consider at least this facet of the complaint as a charge of conduct which is not constitutionally protected even though the threatened expression would have been, if made.

We conclude that the complaint in the disciplinary proceeding is not so clearly directed at imposing discipline for the exercise of free speech as to make the bringing of the proceeding a deprivation of any federally secured right.

There are no issues of fact in the action in this court, and judgment will be rendered upon the pleadings. The judgment will declare that the provisions of sec. 256.29, Wis. Stats., with reference to the oath of an attorney to maintain the respect due to courts of justice and judicial officers are not, as construed by the Supreme Court of Wisconsin, on their face, in conflict with the First and Fourteenth Amendments to the Constitution of the United States by reason of overbreadth, and will, in so far as the complaint seeks injunctive relief, dismiss the same.

It is ordered that judgment be entered in accordance with the foregoing opinion.

11. Cameron v. Johnson (1968), 390 U.S. 611, 617, 88 S.Ct. 1335, 20 L.Ed.2d 182. See also Giboney v. Empire Storage & Ice Co. (1949), 336 U.S. 490, 502, 69 S.Ct.

684, 93 L.Ed. 834; Cox v. Louisiana (1965), 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471.